**Frank J. SHELMAN,
Plaintiff-Appellant,**

v.

**Margaret M. HECKLER, Secretary of
Health & Human Services,
Defendant-Appellee.**

No. 85–1736.

United States Court of Appeals,
Sixth Circuit.

May 13, 1987.

Edward J. Clinton, Jr., Weisberg and Walkon, P.C., Southfield, Mich., for plaintiff-appellant.

Ellen Christensen, U.S. Atty., Detroit, Mich., Robert E. Hanson, argued, Dept. of H.H. & S., Chicago, Ill., for defendant-appellee.

Before MARTIN and MILBURN, Circuit Judges, and ALDRICH, District Judge [*].

MILBURN, Circuit Judge.

Plaintiff-appellant Frank J. Shelman appeals from the district court's order affirming the final decision of the Secretary of Health and Human Services denying his applications for social security disability insurance benefits and supplemental security income. For the reasons that follow, we reverse.

[*] The Honorable Ann Aldrich, United States District Court for the Northern District of Ohio, sitting by designation.

## I.

On February 24, 1983, plaintiff filed applications for disability benefits and supplemental security income alleging that he had been disabled since October 1981 due to "bad heart & lungs, diabetes." Plaintiff's applications were denied initially and upon reconsideration. Plaintiff requested and was granted a de novo hearing before an administrative law judge ("ALJ"), which was conducted on June 18, 1984.

Plaintiff testified that he was born on February 18, 1943, and that he failed to complete the ninth grade. Plaintiff was employed as a gas station cashier from 1980 to 1981 where he was required to stock merchandise and lift as much as fifty pounds. Plaintiff was employed as a welder and painter from 1973 to 1977 and was required to lift as much as eighty pounds and stand all day when he was painting. Plaintiff brought a portable oxygen unit to the hearing and testified that he had been using oxygen for more than a year.

Dr. Andrew Zazaian, plaintiff's treating physician, submitted a consultation report dated June 12, 1984. Dr. Zazaian diagnosed "marked to severe obstructive and restrictive pulmonary disease secondary to smoking and possibly secondary to fumes or asbestos" and "[a]trial fibulation [sic] secondary to lung disease." Dr. Zazaian noted that plaintiff has "a history of pulmonary fibrosis possibly secondary to asbestos and fumes," "a history of possible congestive cardiomyopathy as diagnosed by echocardiogram" and "a history of diabetes mellitus." Dr. Zazaian also noted that plaintiff has had "multiple workups for pulmonary effusions with a thoracentesis" which were "negative for any tuberculosis" and were "presumed to be secondary to his chronic obstructive lung disease and restrictive disease secondary to asbestos."

Dr. Zazaian concluded that plaintiff "is unable to ambulate very long due to shortness of breath" and "must wear a home oxygen [unit] for at least 20 hours per day, and [undergo] several machine bronchodilator therapies per day." Dr. Zazaian's report made express reference to a cardiac catheterization which plaintiff underwent on March 26, 1984. The cardiac catheterization revealed "diffuse dilated congestive cardiomyopathy," but "no evidence of coronary artery occlusive disease." Oxygen saturation levels were obtained during the catheterization. Oxygen saturation in the aorta was 95%, but oxygen saturation in the main pulmonary artery was only 74%.

Dr. John W. Cooke, plaintiff's treating physician, submitted a consultation report dated December 2, 1983. Dr. Cooke diagnosed "pulmonary fibrosis and a combination of obstructive diseases secondary to heavy smoking and also exposure to fumes and asbestos," a "history of diabetes mellitus Type II," "[a]trial fibulation [sic] secondary to pulmonary disease," and "[p]olycythemia secondary to chronic lung disease." Dr. Cooke noted that plaintiff has been hospitalized three times for pneumonia and has suffered "recurrent pulmonary effusions." Dr. Cooke also noted that plaintiff has had "[m]ultiple attempts at thoracentesis and workups for pulmonary fibrosis usually revealing asbestosis." Dr. Cooke recommended "home oxygen therapy with nasal tube" and concluded that plaintiff "is not able to be employed because of his severe chronic lung disease and his multiple medical complaints."

Dr. Mary C. Wood and Dr. Anibal Cazal examined plaintiff at the request of the state agency. Dr. Wood's report, dated August 16, 1985, concluded that plaintiff suffers moderate to severe chronic obstructive pulmonary disease. Dr. Wood's examination of plaintiff's chest and lungs revealed "dullness on percussion left lower lung, deminished [sic] diaphragm movement, deminished [sic] breathing sounds, minimal expiratory phase with rhonchi." Dr. Wood performed pulmonary function studies which indicated "severe airway obstructive concurrent with moderate restrictive defect, consistant [sic] with chronic pulmonary disease."

Dr. Anibal Cazal's report, dated March 28, 1983, concluded that plaintiff suffers from diabetes mellitus, restrictive pulmonary disease, and chronic atrial fibrillation with controlled ventricular response. Dr. Cazal performed pulmonary function stud-

ies which revealed a "moderate degree of restrictive lung disease." Dr. Cazal reviewed chest X–rays which revealed "bilateral pleural thickening without significant change" since plaintiff's hospitalization for left pleural effusion.

Dr. Leon S. Obushkevick and Dr. Russell Bolton assessed plaintiff's residual functional capacity. Dr. Obushkovick's report, dated April 8, 1983, concluded that plaintiff could lift or carry a maximum of twenty pounds, that plaintiff could "stand and/or walk" about six hours per eight-hour day, and that plaintiff could sit about six hours per eight-hour day. Dr. Obushkevick cautioned that plaintiff's activities would be impaired by fumes or dust. Dr. Bolton's report, dated August 25, 1983, provided a virtually identical assessment except Dr. Bolton performed pulmonary function studies which indicated that plaintiff suffers chronic obstructive pulmonary disease.

Plaintiff was hospitalized on February 15, 1983, for cardioconversion. Dr. D. Popat performed an EKG which revealed atrial fibrillation with controlled ventricular response and nonspecific S–T wave changes which were probably secondary to digitalis effect. A chest X–ray revealed that the pulmonary vasculature was within normal limits and that there were no pulmonary infiltrates. Cardioconversion failed to correct plaintiff's arrhythmia but his ventricular rate was well controlled with medication. Plaintiff was also hospitalized on October 30, 1981, with "left pleural effusion." The discharge summary revealed that plaintiff had been hospitalized earlier in October 1981 with "weakness, diaphoresis, and left pleuritic chest pain." The discharge summary concluded that plaintiff suffered from "pleural effusion" which was attributable to a parapneumonic process.

Dr. Benjamin M. Lewis, a medical adviser, reviewed the medical evidence and testified that plaintiff suffers from pleural thickening, obstructive pulmonary disease, atrial fibrillation, cardiomyopathy, and diabetes. Dr. Lewis testified that none of the pulmonary function studies were entirely satisfactory and noted that there was an oxygen saturation level of 95% in the aorta during the cardiac catheterization. Dr. Lewis testified that oxygen therapy might be appropriate, but there was not enough information to say. Dr. Lewis concluded, without explanation, that plaintiff's symptoms were qualitatively, but not quantitatively, consistent with the medical evidence and that plaintiff should be restricted to sedentary work.

The ALJ found that plaintiff suffers from severe chronic obstructive lung disease, pleural thickening of the lungs, controlled diabetes mellitus, and cardiomyopathy, but that he does not have an impairment or combination of impairments listed in, or medically equal to, one listed in Part 404, Subpart P, Appendix 1, Regulation No. 4. The ALJ further found that plaintiff's alleged need for a portable oxygen unit was not supported by objective medical evidence and that, although plaintiff could not perform his past relevant work, he retained the residual functional capacity to perform a full range of sedentary work. The ALJ, after finding that plaintiff's capacity for sedentary work was not significantly compromised by his nonexertional limitations, relied on the medical vocational guideliness as a "framework for decisionmaking" and determined that plaintiff was not disabled.

The ALJ's decision became the final decision of the Secretary when the Appeals Council affirmed it on October 31, 1984. Plaintiff, pursuant to 42 U.S.C. § 405(g), sought review in the district court, and the case was referred to the United States Magistrate. The Magistrate recommended that the findings of the Secretary be affirmed. The district court accepted the Magistrate's Report and Recommendation and granted summary judgment in favor of the Secretary. The instant appeal ensued.

## II.

### A. *Standard of Review*

Pursuant to 42 U.S.C. § 405(g), judicial review of the Secretary's decision is limited to determining whether there is substantial evidence in the record as a whole to support the decision. The reviewing court "may not try the case *de novo*, nor resolve

conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler,* 745 F.2d 383, 387 (6th Cir.1984). The Secretary is charged with finding the facts relevant to an application for disability benefits, and the Secretary's findings, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g).

Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)). "Substantiality of the evidence must be based upon the record taken as a whole" and " 'must take into account whatever in the record fairly detracts from its weight.' " *Garner,* 745 F.2d at 388 (quoting *Beavers v. Secretary of Health, Education & Welfare,* 577 F.2d 383, 387 (6th Cir.1978)).

Once it is established that the claimant cannot perform his past relevant work, the burden shifts to the Secretary to establish that the claimant retains the residual functional capacity to perform alternative substantial gainful work which exists in the national economy. *Bapp v. Bowen,* 802 F.2d 601, 604 (2d Cir.1986); *see also Francis v. Heckler,* 749 F.2d 1562, 1564 (11th Cir.1985). There must be "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform specific jobs." *O'Banner v. Secretary of Health, Education & Welfare,* 587 F.2d 321, 323 (6th Cir.1978); *see also Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984) (per curiam).

### B.  *Oxygen Therapy*

Plaintiff argues the ALJ erred in finding that plaintiff's need for a portable oxygen unit was not supported by objective medical evidence. The ALJ relied on the testimony of Dr. Lewis, the medical adviser,

who, according to the ALJ, testified "that a saturation of blood oxygen of 95%, as established by objective findings, does not substantiate the need for a portable oxygen unit." The ALJ's characterization of Dr. Lewis' testimony is somewhat inaccurate. When asked to discuss plaintiff's obstructive pulmonary disease, Dr. Lewis responded:

> The only thing I can find is in the recent material that was brought in as a part of the cardiac catheterization. It says that in the aorta, which is the equivalent of an artery, the saturation was 95%. Usually this means fairly normal arterial oxygen tension. Although in all fairness, they didn't do that, so that the—I'd have to say that there clearly is obstructive pulmonary disease, but there is no completely satisfactory evaluation of how bad it is from the record that's available to me.

Joint App. at 69–70. When later asked if the use of oxygen is appropriate, Dr. Lewis responded that "it might be, there just isn't enough information to answer that." Joint App. at 78.[1]

Plaintiff contends that the reports of his treating physicians, Dr. Cooke and Dr. Zazaian, establish his need to use continuing oxygen therapy. "The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference." *Harris v. Heckler,* 756 F.2d 431, 435 (6th Cir.1985); *see also King v. Heckler,* 742 F.2d 968, 973 (6th Cir.1984). Dr. Zazaian opined in his June 19, 1984 report that plaintiff must wear a home oxygen unit for at least 20 hours per day, and undergo several machine bronchodilator therapies per day. Further, Dr. Cooke stated in his December 1983 report that he planned to "attempt home oxygen therapy with nasal tube."

▪ The Secretary argues that plaintiff's reliance on the opinions of Dr. Cooke and Dr. Zazaian is misplaced because neither opinion is based upon sufficient medical data. While the opinion of a treating

---

1. The ALJ also relied on the August 1983 report of Dr. Mary Wood, which, according to the ALJ, stated that "pulmonary function studies showed 95% oxygen saturation." Our review of Dr. Wood's report does not reveal any support for this statement.

physician is entitled to substantial deference only if it is supported by sufficient medical data, *Harris*, 756 F.2d at 435, the ALJ made no finding that the opinions of plaintiff's treating physicians were not supported by sufficient medical data. Dr. Zazaian reviewed the history of plaintiff's chronic obstructive pulmonary disease, stating that plaintiff "has a history of pulmonary fibrosis possibly secondary to asbestos and fumes," and "has had multiple workups for pulmonary effusions with a thoracentesis." Dr. Zazaian further stated that plaintiff's lung disease is severe and that plaintiff takes "home updraft treatments for bronchodilitation" four to six times per day and "inhalers" at least ten times per day. Dr. Zazaian prescribed home oxygen only after making express reference to plaintiff's cardiac catheterization which revealed an oxygen saturation level of 74% in the main pulmonary artery. Further, Dr. Cooke noted that plaintiff had been hospitalized three times for pneumonia and that plaintiff had multiple "workups for pulmonary fibrosis usually revealing asbestosis." Dr. Cooke also noted that plaintiff had had "recurrent pulmonary effusions with a thoracentesis for these."

▪ While the ALJ was not bound by the opinions of plaintiff's treating physicians, he was required to set forth some basis for rejecting these opinions. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir.1986); *Jones v. Heckler*, 760 F.2d 993, 997 (9th Cir.1985). The testimony of Dr. Lewis cannot provide a sufficient basis for rejecting the opinions of plaintiff's treating physicians since "the opinion of a nonexamining physician is entitled to little weight if it is contrary to the opinion of the claimant's treating physician." *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985) (per curiam); *see also Fife v. Heckler*, 767 F.2d 1427, 1431 (9th Cir.1985). Thus, the ALJ applied an erroneous legal standard with respect to the opinions of plaintiff's treating physicians. *See Broughton*, 776 F.2d at 962.

### C. *Nonexertional Limitations*

Plaintiff argues that in light of his nonexertional limitations, the ALJ erred in re-

lying upon the grid to determine that plaintiff was not disabled. The ALJ noted that "[s]ection 201.00 of Appendix 2, Subpart 2, Regulations No. 4, recognizes approximately 200 sedentary, unskilled occupations which can be identified in the national economy" and took "administrative notice of a significant number of entry level sedentary jobs that exist in the workplaces that are relatively free of atmospheric pollutants." The ALJ then concluded that the grid could be utilized as a "framework for decisionmaking" since plaintiff's "capacity for sedentary work [had] not been significantly compromised by his additional nonexertional limitations."

▪ Plaintiff contends that the ALJ's reliance on the grid as a "framework for decisionmaking" was improper since the record does not contain any evidence to support the conclusion that plaintiff's nonexertional limitations do not significantly compromise the employment opportunities otherwise available. Reliance upon the grids in the presence of nonexertional limitations requires reliable evidence of some kind that the claimant's nonexertional limitations do not significantly limit the range of work permitted by his exertional limitations. *See Bapp v. Bowen*, 802 F.2d 601, 604–05 (2d Cir.1986); *Warmoth v. Bowen*, 798 F.2d 1109, 1112 (7th Cir.1986) (per curiam); *Damron v. Secretary of Health and Human Services*, 778 F.2d 279, 281–82 (6th Cir.1985). The ALJ found that plaintiff's residual functional capacity for sedentary work is limited to "settings relatively free of atmospheric pollutants and irritants," and the record admits of no evidence to the contrary. This initial finding confutes the ALJ's later conclusion that plaintiff's nonexertional limitations do not significantly limit his capacity for sedentary work.

▪ The Secretary argues that the ALJ properly took administrative notice that there are a significant number of entry level sedentary jobs which could accommodate plaintiff's nonexertional limitations. To the contrary, "[a]pproximately 85 percent of the 200 unskilled, sedentary occupa-

tions that exist throughout the national economy are in the machine trades and bench work categories." *Warmoth,* 798 F.2d 1112, *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2, § 201.00(a). "Machine trades and bench work by their nature often involve exposure to dust, fumes, and other suspended particulates irritating or intolerable to persons afflicted with respiratory ailments." *Thomas v. Schweiker,* 666 F.2d 999, 1005 n. 8 (5th Cir.1982) (per curiam); *see also Warmoth,* 798 F.2d at 1112. The ALJ's finding that a significant number of unskilled, sedentary jobs would not be ruled out by plaintiff's nonexertional limitations, which was made without citation of any authoritative references or any other evidence, was clearly in error. *Warmoth,* 798 F.2d at 1112.

### III.

The judgment of the district court is therefore VACATED and the case REMANDED with instructions to remand to the Secretary for an award of disability benefits.[2]

---

**2.** Immediately prior to oral argument, we received a "Suggestion of Death Upon the Record" and a "Certificate of Death" reflecting that plaintiff died on April 14, 1987. The Certificate of Death, "which attributed plaintiff's death to "cardiorespiratory arrest" due to "arteriosclerotic cardiovascular disease" and "chronic obstructive pulmonary disease" provides additional support for our conclusion that plaintiff was disabled.