978 F.2d 1259
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Sabert NICHOLS, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 92-5089.
 United States Court of Appeals, Sixth Circuit.
 Oct. 27, 1992.
 
 Before MILBURN and ALAN E. NORRIS, Circuit Judges, and LIVELY, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff Sabert Nichols appeals the summary judgment of the district court affirming the decision by the Secretary of Health and Human Services which held that plaintiff Nichols was not disabled and therefore not entitled to disability insurance benefits or supplemental security income under the provisions of the Social Security Act. On appeal, the issues are (1) whether the Secretary's findings regarding plaintiff's ability to perform light work are supported by substantial evidence, (2) whether the Secretary's findings concerning plaintiff's mental impairment are supported by substantial evidence, and (3) whether the district court (a) found plaintiff limited to sedentary work and then (b) erred in applying the grid rules to the facts of this case. For the reasons that follow, we reverse and remand.
 
 I.
 
 2
 Plaintiff is a fifty-two year old male with a ninth grade education whose past relevant work was that of a coal mine foreman. He injured his back on August 4, 1986, but continued working until the mine closed later that year. In his claim for benefits, he asserted disability based on a number of impairments including back problems associated with the laminectomy of a herniated disc at L4-L5, chronic pulmonary disease associated with pneumoconiosis, a high frequency hearing loss, chest pains, and depression. Because plaintiff limits his appeal to claims of error concerning his back and mental condition, only the facts relating to those alleged impairments need be considered.
 
 
 3
 The medical evidence of record shows that in December 1986, Dr. Jaldir Lobo performed a laminectomy of a herniated disc at L4-L5. Following this surgery, plaintiff entrusted the care of his back to two physicians, Dr. Wells, a family practitioner, and Dr. Shafer, an orthopaedic surgeon.
 
 
 4
 Dr. Wells considered plaintiff disabled and very limited in his daily activities. In a report dated August 22, 1989, he found plaintiff unable to stoop or bend or to lift any weight or to sit or stand for any significant period of time during an eight-hour workday. Dr. Wells found plaintiff to have no mental disorders.
 
 
 5
 Dr. Shafer undertook plaintiff's treatment on November 17, 1987, when she prepared a report finding that plaintiff could sit, stand or walk for only an hour at a time and for only three hours during an eight-hour workday. She also determined that, although he could never lift more than ten pounds, he could lift or carry up to ten pounds occasionally. She further found that plaintiff could not use his feet for repetitive movements in pushing and pulling of leg controls. He could bend, squat, crawl, climb, and reach on an occasional basis.
 
 
 6
 On July 13, 1988, Dr. Shafer reported that plaintiff's pain had progressed from his back into his right leg. She found his right calf to be one inch smaller in diameter than the left calf, and she noted a right foot drop when plaintiff walked. She was most explicit about plaintiff's deteriorating condition: "This is a change from November. This is a worsening of his condition." Tr. 320. In the same report, Dr. Shafer also noted plaintiff's inability to sit for more than one-half an hour at a time or to lift more than ten pounds. She found him depressed as a result of persistent pain and his inability to work.
 
 
 7
 These clinical findings confirmed an earlier lumbar thermograph performed on plaintiff on May 11, 1988, which showed a marked coolness from the L4-L5 rootlet radiating distal into the right buttock. Tr. 322. In January 1989, Dr. Shafer reported findings that plaintiff had decreased sensation in his leg, that his back was still in spasm, that forward flexion was limited to ten degrees, backward flexion to five degrees, that plaintiff had a decreased left heel reflex, that his left calf was one-half inch smaller in diameter than the right, and that he had difficulty walking on his heels and toes. Again, she noted a diagnosis of depression but did not elaborate.
 
 
 8
 On May 12, 1989, Dr. Shafer again reported that plaintiff had difficulty lifting, sitting, or standing. It was her opinion that plaintiff's condition had worsened since his laminectomy and that the osteophytes shown on his lumbosacral x-rays had grown worse. She found the left (sic) calf still one-half inch less in diameter than the right one. She also noted decreased left heel reflexes and a persistent numbness in the left calf.
 
 
 9
 In her final report on August 29, 1989, Dr. Shafer reported that plaintiff's back still caused him pain that radiated into his right leg. She found his forward flexion limited to sixty degrees and noted a decreased left heel reflex and numbness of the left calf. She stated that he could lift only about ten pounds.
 
 
 10
 In December 1988 and July 1989, Dr. Guberman, a board-certified internist and examining physician for the Social Security Administration, examined plaintiff and reported findings that plaintiff had a painful back with muscle spasm and limited motion. Straight leg raising was diminished, and plaintiff's right leg was weakened. Dr. Guberman also noted decreased touch and pin-prick response in the first toe of the right foot as well as a diminished right patellar reflex and diminished Achilles tendon reflexes in both legs. He further reported that plaintiff was able to walk on his heels and toes, but only with difficulty, and that plaintiff required assistance in rising from the squatting position. From his examination, Dr. Guberman concluded, "There are persistent range of motion abnormalities in the lumbar spine and [plaintiff's] gait is antalgic but not lurching. There are motor, sensory and reflex abnormalities suggestive of nerve root damage." Tr. 358-59. Dr. Guberman also noted that "psychiatric problems cannot be excluded." Id. In a medical assessment accompanying his report, Dr. Guberman found plaintiff to be capable of lifting thirty-five to forty pounds occasionally and fifteen pounds frequently. He thought plaintiff could stand for one hour continuously and for four or five hours during the day. He also found that plaintiff could sit for a total of six hours during the day and that he could sit continuously for two to three hours.
 
 
 11
 Another consulting physician, Dr. Wicker, a practitioner of internal medicine, reported on August 30, 1988, that plaintiff's sitting straight leg raising test was negative while his lying straight leg raising test was positive. This indicated the possibility of malingering to Dr. Wicker. He also found "noted sclerosis of L4-L5, straightening of the normal lumbar curvature ..., [and] osteophyte formation in the mid thoracic vertebrae."
 
 
 12
 There is also some evidence of a mental impairment in this record. Dr. Shafer, plaintiff's orthopaedic surgeon, remarked in her report of July 13, 1988, that plaintiff had "developed depression as a result of his inability to work and the persistent pain." Dr. Shafer reiterated this finding as part of her diagnosis in a report of January 6, 1989. Dr. Ameji, a family practitioner, reported on October 14, 1987, that plaintiff had a "generalized anxiety problem with adjustment problems." Neither physician elaborated on his or her observations.
 
 
 13
 In a report prepared at the request of plaintiff's attorneys, a clinical psychologist noted that, although plaintiff did no cooking, cleaning, clothes washing, car washing, working in the yard, or traveling, he routinely read the newspaper, dressed and fed himself, and went to church regularly. He drove himself for short distances. He did not lose his temper and he remained sexually active. The thrust of this report is that a Minnesota Multiphasic Personality Inventory ("MMPI") did not show clinical depression[1] in plaintiff, although the test did "suggest" that plaintiff tended to minimize his symptoms. The psychologist concluded with an opinion that plaintiff's ability to maintain gainful employment would be complicated by symptoms of depression, but he gave no basis for this viewpoint.
 
 
 14
 Finally, Dr. Guberman noted in his January 1989 report that some of plaintiff's constriction of interest and restriction of activities might be due to psychiatric problems. He found, however, "no evidence of deterioration in personal habits ..." and concluded that plaintiff could personally handle any benefits awarded.
 
 
 15
 Plaintiff filed his application for disability insurance benefits in March 1987. After an unfavorable decision by the Secretary and an appeal by plaintiff, the district court remanded the case on August 24, 1988. The Secretary conducted a supplemental hearing September 8, 1989, and a decision denying benefits issued on June 27, 1990. After affirmance by the Appeals Council, plaintiff appealed to the district court which affirmed the decision of the Secretary on December 23, 1991. This timely appeal followed.
 
 II.
 
 16
 On review, this court is limited to determining whether the findings of the Secretary are supported by substantial evidence, 42 U.S.C. § 405(g); Born v. Secretary of Health and Human Services, 923 F.2d 1168, 1173 (6th Cir.1990), and whether the correct legal standards were applied. Richardson v. Perales, 402 U.S. 389, 401 (1971); Landsaw v. Secretary of Health and Human Services, 803 F.2d 211, 213 (6th Cir.1986). Substantial evidence is defined as that which a reasonable mind might accept as adequate to support a given conclusion. McCormick v. Secretary of Health and Human Services, 861 F.2d 998 (6th Cir.1988).
 
 A.
 
 17
 Plaintiff argues that the Secretary's decision is not supported by substantial evidence because the Secretary gave too little weight to the findings of plaintiff's treating physicians and too much weight to the findings of physicians employed to evaluate plaintiff for purposes of this litigation. The general rule in this circuit is stated in Hurst v. Schweiker, 725 F.2d 53, 55 (6th Cir.1984):
 
 
 18
 In this Circuit greater weight is given to the opinions pertaining to disability of treating physicians than to the reports of physicians who are employed for an examination in preparation for a social security hearing.
 
 
 19
 Accord Hardaway v. Secretary of Health and Human Services, 823 F.2d 922, 927 (6th Cir.1987) (per curiam); Allen v. Califano, 613 F.2d 139, 145 (6th Cir.1980).
 
 
 20
 A corollary to this rule, one stemming from this court's preference for the opinions of treating physicians, holds that the Secretary must "set forth some basis for rejecting" the opinions of treating physicians. A default in this regard is legal error because it results in the application of "an erroneous legal standard with respect to the opinions of plaintiff's treating physicians." Shelman v. Heckler, 821 F.2d 316, 321 (6th Cir.1987). The court went on to explain that
 
 
 21
 [w]hile the opinion of a treating physician is entitled to substantial deference only if it is supported by sufficient medical data, the ALJ made no finding that the opinions of the plaintiff's treating physicians were not supported by sufficient medical data.
 
 
 22
 Id. at 320-21 (citation omitted). This rule is recognized in other circuits as well. MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir.1986) (failure to specify the reason for giving a treating physician's opinion no weight is reversible error); Jones v. Heckler, 760 F.2d 993, 997 (9th Cir.1985) (ALJ must set forth "specific, legitimate reason[s]" for disregarding a treating physician's opinion).
 
 
 23
 In the present case, the Secretary had before him the reports of Drs. Shafer and Wells, both of whom were treating physicians. Dr. Shafer found plaintiff capable of lifting weights up to ten pounds only occasionally. Dr. Wells found plaintiff incapable of lifting any weight. Had the findings of these treating physicians been accepted by the Secretary, they would have resulted in the conclusion that plaintiff was capable only of sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a). However, Grid Rule 201.10, 20 C.F.R. Part 404, Subpart P, Appendix 2, would then have compelled a finding that plaintiff was disabled because he was a person closely approaching advanced age with a limited education and skills not readily transferrable. Instead, the Secretary determined that plaintiff was qualified for light work, which involves lifting up to twenty pounds and frequently lifting weights up to ten pounds, 20 C.F.R. §§ 404.1567(b) and 416.967(b), by relying on the findings of Dr. Guberman and ignoring the findings of the plaintiff's treating physicians. Grid Rule 202.11, applicable to light work rather than sedentary work, then directed a finding of not disabled.
 
 
 24
 The question of whether plaintiff is disabled or not comes down to which grid rule table is applied to his case--the table governing sedentary work or light work. That decision in turn depends on the Secretary's findings as to plaintiff's physical exertion capacities as defined in 20 C.F.R. §§ 404.1567 and 416.967. The Secretary accepted Dr. Guberman's findings, which compelled the conclusion that plaintiff could engage in light work, and ignored the findings of Drs. Shafer and Wells which limited plaintiff to sedentary work. Although the findings of the treating physicians are recited in the Secretary's decision, there was no attempt to explain why their findings were unacceptable. This complete failure is reversible error. Shelman, 821 F.2d at 321.
 
 B.
 
 25
 Plaintiff argues that the Secretary erred in determining that plaintiff did not have a severe mental impairment. He relies on the report of a clinical psychologist who apparently interviewed plaintiff and administered an MMPI. From the results of that test, the psychologist concluded that, although plaintiff did not present himself as clinically depressed, his personality traits caused him to minimize his symptoms resulting in a situation in which plaintiff was possibly more depressed than he appeared to be. The psychologist then guessed that the true level of plaintiff's depression would "complicate" his ability to maintain employment.
 
 
 26
 He tends to see his feelings of depression and anxiety as a natural course for someone who developed his pain disorder. This is true to a degree; however, his MMPI suggests that he tended to minimize his symptoms and actually they are worse than he is admitting to. Given this, it would seem that his levels of depression would complicate his ability to maintain gainful employment at this time.
 
 
 27
 Tr. 417 (emphasis added).
 
 
 28
 In his summary, the psychologist again admitted that plaintiff's symptoms of restlessness, irritability, and poor sleep resulted to some extent from his physical problems and pain.
 
 
 29
 To some degree, these could be attributed to his physical problems; however, his response to the MMPI suggests he is experiencing symptoms of depression but tending to minimize those. It would seem that these would further complicate his ability to maintain gainful employment at this time.
 
 
 30
 Tr. 418 (emphasis added).
 
 
 31
 It is questionable whether this psychologist's report diagnoses plaintiff as depressed at all. If it does, it does so admitting that plaintiff's symptoms of depression might well be equally attributed to his physical problems. The finding that these equivocal symptoms would "complicate" plaintiff's ability to maintain employment is highly speculative and does not amount to a conclusion that plaintiff cannot engage in gainful employment. The report does not explain how any of these supposed symptoms would or could interfere with any particular work, and under the circumstances the Secretary was justified in giving it little weight, particularly so where the psychologist was not a treating psychologist, but rather one employed by plaintiff's attorney for the purposes of this litigation. See Atterberry v. Secretary of Health and Human Services, 871 F.2d 567, 572 (6th Cir.1989) (evaluating psychologist's opinion not entitled to weight of a treating physician's); Bowman v. Heckler, 706 F.2d 564, 568 (6th Cir.1983).
 
 
 32
 The Secretary employed a special procedure required by 20 C.F.R. §§ 404.1520a and 416.920a under which a form is used to list the signs and symptoms that establish the existence of the alleged mental impairment. The form also rates the degree of functional loss resulting from any documented mental impairment. A completed Psychiatric Review Technique Form is duly appended to the Secretary's decision in this case, and plaintiff does not attack any of its findings specifically. The Secretary, therefore, is justified in his finding that "the evidence suggests that the claimant is suffering from mild depression secondary to physical problems...." Tr. 211. The Secretary's findings with respect to social functioning and daily activities are also unchallenged by plaintiff. Therefore, the Secretary's conclusion that plaintiff does not have a severe mental impairment is justified and supported by substantial evidence.
 
 
 33
 As for the reports of Drs. Shafer and Ameji, their bare suggestions that plaintiff was depressed carry little weight because they are not based on objective findings and do not imply that plaintiff is disabled by his depression. To the extent that the Secretary found plaintiff to be suffering from "mild depression secondary to physical problems ...," Tr. 211, he adopted the physicians' findings.
 
 C.
 
 34
 Defendant argues that the district court may not have applied the proper standards to determine the question of disability. Referring to the final paragraph of the district court's decision, plaintiff contends that "the District Court did not consider the fact that the Appellant would be disabled under the Grid Rules, if he is deemed to be limited to sedentary work." Brief of Appellant at 18.
 
 
 35
 Whether or not the district court understood the crucial significance of the medical disagreement over plaintiff's physical exertion capacity is irrelevant because we have fully considered the matter on its merits in Section IIA above. On remand, the appropriate grid rules can be applied after plaintiff's physical capacities are properly determined.
 
 III.
 
 36
 For the reasons stated, the summary judgment of the district court is REVERSED, and this case is REMANDED to the district court with instructions to remand it to the Secretary of Health and Human Services for further proceedings consistent with the rule in Shelman v. Heckler. Specifically, the Secretary must explain his basis for rejecting the opinions of the treating physicians in this case.
 
 
 
 [1]
 The report stated: "[T]he MMPI reveals a valid profile and is consistent with someone who is attempting to downplay or to minimize his actual difficulties. Persons with this profile, while they may not present themselves as clinically depressed, are likely to experience moderate to severe symptoms of depression."