19 F.3d 1432
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Meda F. FOGLESONG, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 93-5190.
 United States Court of Appeals, Sixth Circuit.
 Feb. 25, 1994.
 
 Before: MILBURN and BOGGS, Circuit Judges; and MILES, Senior District Judge.*
 PER CURIAM.
 
 
 1
 Plaintiff-appellant Meda F. Foglesong appeals the decision of the Secretary of Health and Human Services denying her request for supplemental security income under 42 U.S.C. Secs. 1381 et seq. For the reasons discussed herein, we affirm.
 
 
 2
 * Foglesong, born January 29, 1945, filed her application for supplemental security income in September 1988, alleging disability commencing September 1, 1981, because of headaches, thyroid disorder, depression, and inability to hold food in her stomach. After denials at the initial and reconsideration levels, an ALJ conducted a hearing in November 1989. At the hearing, Foglesong also alleged nerve, leg, and back problems. The ALJ found that Foglesong was not disabled and was capable of performing a significant number of unskilled low-stress sedentary jobs existing in the regional economy. The Appeals Council in March 1991 denied Foglesong's request for review of the ALJ's decision, thereby making the ALJ's decision the final decision of the Secretary.
 
 
 3
 Foglesong, represented by counsel, testified at the hearing that she has a sixth-grade education and, for work, has done only some "[l]ittle odd jobs," such as housecleaning, some volunteer work, and some "piece work" at the Easter Seal Center. She prepares her own meals, does laundry and other household chores weekly, and runs errands, including grocery shopping for one to two hours at a time. She reads, watches television, listens to music, and talks on the CB. She visits her children at least once a week for a couple of hours, regularly attends church, and socializes with friends. She testified that her physical problems cause her pain. She stated that she often thinks about committing suicide.
 
 
 4
 Dr. Tom Wagner, a licensed psychologist, served as medical advisor at the administrative hearing and based his testimony on a review of the medical evidence of record and Foglesong's testimony. He diagnosed dysthymia and found slight restriction in her daily living activities, slight limitations in her social functioning, occasional deficiencies of concentration, and one or two episodes of decompensation in a work setting. He concluded that Foglesong has a severe mental impairment requiring a residual functional capacity assessment.
 
 
 5
 Dr. Thomas Mehaffey, a clinical psychologist and the vocational expert, also testified at the hearing. Assuming a person with Foglesong's age, education, physical and mental limitations, and other conditions,[1] Dr. Mehaffey concluded that she could perform a large number of low-stress, unskilled sedentary occupations, such as cashier, ticket seller, charge account clerk, order clerk, visual inspector, and assembler, which existed in a significant number in the regional economy.
 
 
 6
 Other medical evidence in the record includes the following. Bert Fellows, M.A., a certified psychologist, reported that he treated Foglesong a half dozen times from 1975 to 1988 for multiple family problems and depression, that she came in for treatment during times of crisis, that she failed to follow through in her treatment, and that, in June 1988, he diagnosed "Dysthymic Disorder, early onset, primary, 300.40 (with paranoid features)," but found no symptoms that would indicate any restriction of her activities of daily living, although she tended to be socially withdrawn. Fellows concluded that she would "be considered a poor candidate for employment and at this time, even for rehabilitation."
 
 
 7
 In October 1986, Dr. Winston Barnard, M.D., diagnosed an overdose with salicylates, adjustment disorder with mixed disturbance of emotions and "conduct 309.40," hypothyroidism (by history), and morbid obesity.
 
 
 8
 Dr. Richard Hutson assessed Foglesong's residual functional capacity in August 1987 and diagnosed depression. He concluded that she could, with a break every two hours, stand for four hours and sit for four hours, and could stand and sit intermittently for four hours. She could lift 25 pounds occasionally to 10 pounds frequently. Stooping-bending, reaching-handling, use of hands and feet, and climbing-balancing were unrestricted. Her condition was stable and prognosis for return to work was good. Dr. Hutson recommended assistance in vocational training and continuing mental health consultations due to dysthymia and suicidal thoughts.
 
 
 9
 Dr. Bruce Amble completed a psychological evaluation of Foglesong in August 1987, consisting of an interview and six objective tests. Dr. Amble found her to be anxious but compliant, cooperative, candid, unpretentious, and well-motivated. Dr. Amble concluded that Foglesong has a low-normal IQ, has a capacity for two-handed dexterity on tasks requiring simple motor skills, reading vocabulary at the eighth-grade level, and arithmetic skills at the sixth-grade level. She shows a strong and variegated pattern of interest in a number of unrelated vocational activities, including farming, social service, entertainment, music, and applied arts. Dr. Amble diagnosed "an affective disorder, recurrent major depression, DSM III 296.32." He expressed confidence in Foglesong's potential and thought she could acquire, with assistance, competitive job skills.
 
 
 10
 Dr. Thomas M. Cassidy performed a consultative examination in December 1988. He reported that she sometimes has trouble sleeping, that she has a good appetite but diets, does housework with some difficulty due to difficulty in bending, and enjoys cooking, country music, and visiting with friends. Dr. Cassidy reported that Foglesong is able to relate to friends, but is uneasy about having dated a younger man (age 23) for the two years since her divorce. She is alert and cooperative, but is somewhat agitated and sad due to her divorce and concern over her dating relationship and has suicidal thoughts. Dr. Cassidy diagnosed dysthymic disorder of moderate severity and dependent personality; prognosis was fair.
 
 
 11
 Dr. Kent Jones, M.D., examined Foglesong in December 1988 for back pain caused by a fall that happened three years before. Dr. Jones noted the low back pain ("possibly related to old trauma versus weight"), and a history of hypothyroidism, psoriasis, and depression. The ALJ rejected Foglesong's testimony regarding the back impairment because there was no record of treatment for back impairment, she did not allege in her application that her back was a disabling condition, and her complaints were vague.
 
 
 12
 The ALJ found that Foglesong has never engaged in substantial gainful activity, has severe dysthymia, has borderline verbal IQ, and is obese, but that she does not have an impairment or combination of impairments that qualify as a disability under the regulations. Further, he found that her claim of pain was inconsistent with her reported daily activities and therefore not credible. The ALJ found that Foglesong has the residual functional capacity to perform sedentary work activity, but that she should avoid high-stress occupations. The ALJ, using rule 201.18 of the medical-vocational guidelines as a framework for decision, see 20 C.F.R. Pt. 404, Subpt. P, App. 2, concluded that she was not disabled and could perform a significant number of unskilled, low-stress sedentary jobs existing in the regional economy, such as cashier, ticket seller, order clerk, visual inspector, and assembler.
 
 
 13
 The magistrate judge made findings of fact consistent with those described above. The magistrate judge determined that Mr. Fellows's opinion was not based upon a continuing treatment of Foglesong over a period of time; he had only seen her six times since 1975 and then only during periods when her condition was "exacerbated." The magistrate judge concluded that the ALJ's decision was supported by substantial evidence, including the finding that she could perform sedentary work.
 
 
 14
 The district court believed that, because Mr. Fellows had treated Foglesong only sporadically over a number of years, the magistrate judge accorded the full share of deference to which Mr. Fellows's opinion was entitled. The opinions of the other experts (in particular Dr. Amble), who could qualify equally as treating physicians, provided sufficient evidence to support the ALJ's decision.
 
 II
 
 15
 On review, this court must determine whether substantial evidence supports the Secretary's decision denying Foglesong benefits. 42 U.S.C. Secs. 405(g), 1383(c)(3). Substantial evidence is more than a scintilla of evidence but less than a preponderance. Cohen v. Secretary of Dept. of Health & Human Servs., 964 F.2d 524, 528 (6th Cir.1992). It is evidence that a reasonable mind might accept as adequate to support the challenged conclusion. Smith v. Secretary of Health & Human Servs., 893 F.2d 106, 108 (6th Cir.1989). If substantial evidence supports the Secretary's decision, then this court must uphold the ALJ's decision, even if there is evidence to the contrary or supporting the claimant's position. Bradley v. Secretary of Health & Human Servs., 862 F.2d 1224, 1228 (6th Cir.1988). In determining whether substantial evidence exists, this court must examine the evidence in the record as a whole and take into account whatever in the record fairly detracts from its weight. Born v. Secretary of Health & Human Servs., 923 F.2d 1168, 1173 (6th Cir.1990). The conclusions of the ALJ, who has the opportunity and responsibility of observing the demeanor and credibility of witnesses, should be highly regarded. Bradley, 862 F.2d at 1227.
 
 
 16
 Supplemental security income benefits are available to those who can establish "disability" within the terms of the Social Security Act. "Disability" is defined as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. Sec. 1382c(a)(3)(A). The Secretary must consider four factors in determining whether the claimant is capable of performing substantial gainful activity: the claimant's functional capacity to work, age, education, and job experience. 42 U.S.C. Sec. 1382c(a)(3)(B). The Secretary's regulations require following a five-step sequential process in evaluating all claims of mental or physical disability. 20 C.F.R. Sec. 416.920. The claimant has the ultimate burden of proving the existence of a disability.
 
 
 17
 The five-step sequential process is as follows: (1) If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied. 20 C.F.R. Sec. 416.920(b). (2) If the claimant does not have an impairment that significantly limits her ability to work (a severe impairment), then she is not disabled. 20 C.F.R. Sec. 416.920(c). (3) If the claimant is not working and has a severe impairment, it must be determined whether she suffers from one of the "listed" impairments; if so, benefits are due without further inquiry. 20 C.F.R. Secs. 416.920(d), 416.925(a). (4) If the claimant does not suffer from one of the listed impairments, the Secretary must next decide whether the claimant can return to the kind of work she previously did; if the claimant can, then she is not disabled. 20 C.F.R. Sec. 416.920(e). (5) If the claimant cannot return to her previous work, then the burden shifts to the Secretary to establish the claimant's ability to work; the Secretary must prove that, taking into consideration present job qualifications such as age, experience, education, and physical capacity, and the existence of jobs to match those qualifications, the claimant retains the capacity to perform other work that exists in significant numbers in the national economy. 20 C.F.R. Sec. 416.920(f)(1); 42 U.S.C. Sec. 1382c(a)(3)(B). The Secretary's burden can, on occasion, be satisfied by relying on the medical-vocational guidelines. See 20 C.F.R. Pt. 404, Subpt. P, App. 2. If the characteristics of the claimant do not identically match the description in the "grid," however, the grid is used only as a framework or a guide in making the disability determination. Kirk v. Secretary of Health & Human Servs., 667 F.2d 524, 535 (6th Cir.1981), cert. denied, 461 U.S. 957, 103 S.Ct. 2428 (1983).
 
 
 18
 Here, the sequential analysis proceeded to the fifth step. The ALJ found that Foglesong could perform low-stress, unskilled sedentary work.
 
 
 19
 Foglesong argues that the ALJ and district court did not accord the proper weight to the reports of Dr. Cassidy, Dr. Amble, and Mr. Fellows, each of whom found a severe impairment with significant limitations. She argues that the ALJ improperly relied on the conclusions of Dr. Wagner, a nonexamining medical advisor, and that Mr. Fellows is a treating psychologist whose conclusions thus should be entitled to great weight. Further, she argues that the ALJ's decision should be reversed because the jobs suggested by the vocational expert are not on the Secretary's administratively-noticed list of sedentary unskilled jobs (as found in the Dept. of Labor's Dictionary of Occupational Titles ), and thus those jobs were outside her residual functional capacity. Foglesong also argues that Dr. Hutson's conclusions regarding the length of time that she can sit or stand precludes a finding that she is capable of performing sedentary work. Finally, she stresses the remedial, inclusive nature of the Social Security Act.
 
 
 20
 After carefully examining the total record, we conclude that there is substantial evidence in the record supporting the ALJ's decision. "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. Sec. 404.1567(a). Nothing in the records suggests that Foglesong could not perform the physical requirements of sedentary work. Dr. Hutson's residual functional capacity assessment (done in connection with a vocational rehabilitation program) indicates that Foglesong's lifting capacity is within the parameters of sedentary work and placed no restrictions on stooping-bending, reaching-handling, use of hands and feet, and climbing-balancing. Dr. Mehaffey, the vocational expert, took Foglesong's sitting and standing restrictions into account in determining whether she could perform a significant number of jobs; thus, Dr. Hutson's conclusions do not preclude a finding of non-disability. See Bradley, 862 F.2d at 1227. Dr. Jones's report indicates that her range of motion appears to be normal. Dr. Amble, too, indicated that Foglesong has a capacity for two-handed dexterity on tasks requiring simple motor skills. This evidence constitutes much more than a scintilla of evidence that Foglesong could perform sedentary work, thus supporting the ALJ's decision.
 
 
 21
 Substantial evidence also supports the ALJ's decision with respect to Foglesong's mental impairment (dysthymia and low verbal IQ). Dr. Wagner examined the medical evidence of record and heard Foglesong's testimony; thus, the ALJ properly may rely on his conclusions. See Atterberry v. Secretary of Health & Human Servs., 871 F.2d 567, 570 (6th Cir.1989). Dr. Wagner diagnosed dysthymia and concluded that the record indicated only a slight impairment in Foglesong's daily activities, social functioning, and concentration. Foglesong's testimony appears to support this conclusion, as indicated by her running errands and social activities. Dr. Amble noted Foglesong's interest in vocational activities and was impressed with her potential. The vocational expert also took Foglesong's mental impairment into account by looking only at low-stress jobs.
 
 
 22
 Foglesong argues that the ALJ should have given greater weight to Mr. Fellows's conclusions. The medical opinions and diagnoses of treating physicians, if supported by sufficient medical data, are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference. Shelman v. Heckler, 821 F.2d 316, 320-21 (6th Cir.1987). The ALJ must set forth some basis, other than the contradicting opinion of a nonexamining physician, for rejecting the opinion of a treating physician. Id. at 321.
 
 
 23
 Here, the ALJ was presented with reports from more than one treating physician. The opinions of the other treating physicians, such as Dr. Amble, were entitled to as much weight as Mr. Fellows's. Kirk, 667 F.2d at 536. As noted above, too, the ALJ properly could rely on the testimony of Dr. Wagner. Atterberry, 871 F.2d at 570. The district court noted that the magistrate judge discounted Mr. Fellows's conclusions because he had seen her only sporadically and only during times of crisis and therefore his conclusions were not based on sufficient medical data. See Shelman, 821 F.2d at 320-21. Thus, the ALJ did not err in not showing complete deference to Mr. Fellows's conclusions.
 
 
 24
 The ALJ properly relied on the testimony of the vocational expert in determining whether a significant number of jobs exist that a person with Foglesong's abilities and limitations could perform. The regulations permit the use of a vocational expert in determining whether there are jobs that match the abilities and limitations of the claimant. 20 C.F.R. Sec. 416.966(e); Born, 923 F.2d at 1173-74. The ALJ posed a hypothetical to the vocational expert of a person matching Foglesong's age, education, experience, and limitations, and, based on the expert's response, the ALJ found that there were a significant number of low-stress, unskilled sedentary jobs that Foglesong could perform.
 
 
 25
 Finally, this court has noted that, while the Social Security Act is remedial in nature and therefore should be construed to be inclusive rather than exclusive, where there is substantial evidence supporting the Secretary's decision, that decision must be upheld. Rude v. Secretary of Health & Human Servs., No. 88-1651, 1989 WL 36920, at * * 1 n. 1 (6th Cir. Apr. 19, 1989) (unpublished).
 
 III
 
 26
 For the foregoing reasons, the order of the district court is AFFIRMED.
 
 
 
 *
 The Honorable Wendell A. Miles, Senior United States District Judge for the Western District of Michigan, sitting by designation
 
 
 [1]
 The ALJ asked Dr. Mehaffey if someone under the following circumstances could perform substantial gainful activity:
 Age , ... with about a seventh grade education, though she can read and write and assume that she has all the limitations, restrictions, and pain to which she testified and assume that she has nagging, persistent pain in her legs, arm and back that she is uncomfortable in any position, sitting, standing, or even lying down. She is also overweight and has trouble bending over. That's also due to--or that also is caused by the pain. She can sit for one to one-and-a-half hours to two hours at a time, she takes thyroid, nerve and pain pills. She only occasionally takes one pain pill because it puts her to sleep. She has episodes where she is depressed and sad. Mostly because she doesn't have enough money and wants to take care of her children. Assume she does ruminate about dying. Sometimes about suicide and sometimes just would--wants to be called to God. Thinks about these frequently, however she is religious and she has no real plans for suicide. She has--does occasionally hear some voices of her parents which make her feel somewhat better.
 J.A. at 58-59.