Brenda J. HOLLAND, Plaintiff,

v.

Larry G. MASSANARI, Commissioner
of Social Security, Defendant.

No. 00–3016–D/V.

United States District Court,
W.D. Tennessee,
Western Division.

July 13, 2001.

Carla E. Ryan, Deal Cooper & Holton PLLC, Memphis, TN, for Brenda J. Holland, plaintiff.

William W. Siler, Veronica F. Coleman, U.S. Attorney's Office, Memphis, TN, for Kenneth Apfel, Commissioner of Social Security, defendant.

## ORDER DENYING PLAINTIFF'S APPEAL OF SECRETARY'S DECISION TO DENY PLAINTIFF DISABILITY BENEFITS

DONALD, District Judge.

Plaintiff Brenda J. Holland ("Holland") appeals the denial of benefits by Defendant, Larry G. Massanari,[1] Commissioner of Social Security ("Secretary"). The Administrative Law Judge ("ALJ") found that Holland's impairments did not preclude her from performing a full range of light work, and she was therefore not disabled. Holland asserts that the ALJ (1) erred in concluding her impairments did not meet the requirements of Appendix 1, Part 404, Subpart P ("the listings"), (2) failed to give the opinions of her treating physicians proper weight, (3) failed to consider Holland's non-exertional limitations in determining her ability to perform work in the national economy, and (4) failed to give perceptive weight to the lay testimony of Holland's witness. The Court has jurisdiction under 42 U.S.C. § 405(g). For the reasons herein, the Court **DENIES** Holland's appeal and affirms the Secretary's determination that Holland is not disabled.[2]

## I. Factual and Procedural Background

On December 17, 1997, Holland filed for Supplemental Security Income ("SSI"), claiming a disability onset date of January 1, 1995 due to bronchiectasis, chronic obstructive pulmonary disease, immunodeficiency IgA, and scoliosis. Her application was denied, as was her request for reconsideration. After a hearing, ALJ Larry B. Creson issued a decision denying benefits on May 19, 2000, which the Appeals Council affirmed on August 25, 2000.

## II. Standard of reviewing ALJ decision

The standard of review for an appeal of this nature is for the reviewing court to determine if the decision is supported by substantial evidence. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Barker v. Shalala,* 40 F.3d 789, 794 (6th Cir.1994); *Stanley v. Secretary of Health & Human Services,* 39

---

1. Larry G. Massanari became the Acting Commissioner of Social Security on March 29, 2001. Pursuant to Federal Rule of Civil Procedure 25(d)(1), Larry G. Massanari is substituted for former Commissioner Kenneth S. Apfel as the defendant.

2. This Order pertains to Holland's first application for benefits. Holland submitted a second application on October 25, 2000. On February 14, 2001, the Secretary found her disabled and awarded her benefits beginning in October 25, 2001.

F.3d 115, 117 (6th Cir.1994). Also, the reviewing court is authorized to ensure that the correct legal standards were employed. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Cutlip v. Secretary of Health & Human Services,* 25 F.3d 284, 286 (6th Cir.1994); *Landsaw v. Secretary of Health & Human Services,* 803 F.2d 211, 213 (6th Cir.1986). The reviewing court, however, does not resolve conflicts in the evidence or decide questions of credibility. *Bradley v. Secretary of Health and Human Services,* 862 F.2d 1224, 1228 (6th Cir.1988).

### III. Analysis

■ The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. *Abbott v. Sullivan,* 905 F.2d 918, 923 (6th Cir.1990); *Heston v. Comm'r of Soc. Sec.,* 245 F.3d 528, 534 (6th Cir.2001). The ALJ must evaluate whether (1) the claimant is currently engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment is a "listed" disability; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from doing other work. 20 C.F.R. § 416.920; *Bowen v. Yuckert,* 482 U.S. 137, 140–42, 107 S.Ct. 2287, 2290–92, 96 L.Ed.2d 119 (1987). The first four steps are the claimant's burden to prove. In the fifth and last step, the burden shifts to the Secretary, who must show that the claimant can perform other work in the national economy. *Price v. Heckler,* 767 F.2d 281, 284 (6th Cir.1985).

In the present case, the ALJ found that Holland has not engaged in substantial gainful activity since her alleged onset date. Further, the ALJ determined that Holland suffers from severe impairments. At the third step, the ALJ determined, without apparent explanation, that Holland's impairments did not meet the listings. Finding the fourth step inapplicable to Holland, due to her lack of work history, the ALJ proceeded to the fifth and final step. After assessing Holland's residual functional capacity ("RFC"), the ALJ determined that Holland could perform light work, and that her ability to work was not restricted by any non-exertional impairments.

### A. The listings

■ Holland contends that substantial evidence does not support the ALJ's finding that her impairments do not meet the listings. Under the listings, if a claimant's impairment satisfies the requirements of a listed impairment, the Secretary will find the claimant disabled without considering age, education, and work experience. *Johnson v. Secretary of HHS,* 794 F.2d 1106, 1110 (6th Cir.1986). The ALJ must consider whether the claimant's impairment, singly or in combination with another impairment, medically or functionally equals the listings. 20 C.F.R. § 416.924(a). In determining whether an impairment meets the listings, the ALJ must consider all the relevant evidence. *Fargnoli v. Massanari,* 247 F.3d 34, 41 (3rd Cir.2001); *Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir.2001).

■ When the evidence presents conflicting probative evidence, the ALJ must explain why that conflicting evidence was not credited. *Fargnoli,* 247 F.3d at 42; *Cotter v. Harris,* 642 F.2d 700, 705 (3rd Cir.1981). In *Cotter,* for example, the ALJ indicated evidence in support of his finding that the claimant was not disabled, but neglected to explain why he rejected evidence in the claimant's favor. Accordingly, the court in *Cotter* remanded the case, with instructions that the ALJ more fully explain his decision. *Id.* at 708.

■ The ALJ is also required to review the claimant's symptoms and make specific findings essential to the conclusion. *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir.1990). It is unnecessary, however, to require the ALJ to state why a claimant failed to satisfy every element of a listing. *Id.* at 1201. Further, the ALJ is not required to specifically identify the evidence supporting the ALJ's conclusion that the impairment does not meet a listing. In *Gonzalez*, for example, the ALJ did not specifically state what evidence supported his conclusion as to why the claimant's impairments failed to meet the listings. The Ninth Circuit found that the ALJ's five page, single-spaced summary of the record served as an adequate statement of the foundations on which the ALJ's ultimate factual conclusions were based. *Id.*

■ On the other hand, the ALJ's findings should be as comprehensive and analytical as feasible, and should include a statement of subordinate factual foundations on which ultimate factual conclusions are based, so that a reviewing court may know the basis for the ALJ's decision. *Cotter*, 642 F.2d at 705. Otherwise, the reviewing court is unable to properly exercise its responsibility under 42 U.S.C. § 405(g) to determine if the Secretary's decision is supported by substantial evidence. *Cotter*, 642 F.2d at 705.

### 1. Listing 3.07

The listings under 3.00 describe impairments resulting from respiratory disorders. A claimant is required to have a longitudinal record showing treatment in order to demonstrate whether or not the claimant functionally improves with medical intervention. App. 1, Pt. 404, Subpt. P, 3.00(A). Because symptoms are common to many other diseases—such as wheezing and sputum production—physical examination and appropriate imaging techniques are required to establish chronic pulmonary disease. *Id.* Some disorders, such as bronchiectasis and asthma, although intermittent, may become disabling depending on the frequency and intensity of their onset. *Id.* With these type of disorders, the frequency and intensity of episodes therefore often serve as the major criteria for determining the level of impairment. App. 1, Pt. 404, Subpt. P, 3.00(C).

There are two methods by which an impairment may satisfy the listing under 3.07:

*First Method.* The claimant may show impairment of pulmonary function due to extensive disease by demonstrating that the condition meets the criteria listed in 3.02. Listing 3.02 is satisfied when the claimant's FEV[3] reading is equal to or less than the values specified in Table I. The FEV test measures the amount of air one is able to exhale in one second. Under listing 3.02, the FEV reading used to determine whether the impairment meets the listing should represent the largest of at least three satisfactory forced expiratory maneuvers. App. 1, Pt. 404, Subpt. P, 3.00(E). The highest values of the FEV, whether from the same or different tracings, should be used to assess the respiratory impairment's severity. *Id.*

*Second Method.* The claimant may show that episodes of bronchitis, pneumonia, or respiratory failure are documented according to 3.00(C). Listing 3.00(C) mandates that symptoms must persist longer than one day and require

---

**3.** FEV is the acronym for "Forced Expiratory Volume in the First Second." FEV test results are expressed in liters. Linda Cocchiar-ella & Gunnar B.J. Andersson, *Guides to the Evaluation of Permanent Impairment,* American Medical Association, p. 99 (2001).

intensive treatment, such as intravenous bronchodilator, intravenous antibiotic, or prolonged inhalational bronchodilator therapy in a hospital, emergency room, or equivalent setting. These episodes must occur at least once every two months or at least six times a year. Each inpatient hospitalization for longer than twenty-four hours for treatment counts as two episodes, and an evaluation of at least 12 consecutive months must be used to determine the frequency of episodes.

In his review of the record, the ALJ noted that Holland had been hospitalized for eight days in early 1997 (two episodes), for roughly five days in late 1998 (two episodes), and for less than a day on December 27, 1999. The ALJ also indicated that Holland had presented herself to the Emergency Room twice in August of 1999, but that neither visit resulted in treatment by intravenous antibiotics. The ALJ also noted that her pulmonary function tests improved over time when she gave an adequate effort, citing the results of Holland's FEV readings taken throughout 1997: .63L (pre-medication) and 1.11L (post-medication) in February, 1.5L in April, 1.79L in May, and 2.15L in June. Holland's 1999 FEV test was measured at 1.43L, but Dr. Samuel Tickle stated that Holland demonstrated a poor effort of cooperation during the test.

According to the ALJ's finding, Holland's impairments do not meet the elements of listing 3.07. To meet the listing under the first method, Holland, who is five feet four inches, must produce a FEV reading that is equal to or less than 1.25L.App. 1, Pt. 404, Subpt. P, 3.07, Table I. According to the regulations, the highest values of the FEV, whether from the same or different tracings, should be used to determine her eligibility. App. 1, Pt. 404, Subpt. P, 3.00(E). Holland's

highest reading was 2.15L, well above 1.25L. As to the second method, the most episodes that Holland suffered within a twelve month span was two, falling well short of the required six episodes. In its review of the record the Court finds no evidence contradicting the ALJ's findings, and therefore finds that substantial evidence supports his conclusions.

**2. Listing 14.07**

The listings under 14.00 describe impairments involving a deficiency of one or more components of the immune system. Listing 14.07 refers to immunoglobulin deficiency syndromes. Immunoglobulin is a protein capable of acting as an antibody. To satisfy the listing, the condition must be associated with documented and recurrent severe infections occurring three or more times within a five month period.

Acknowledging that Holland suffers from an immune deficiency, the ALJ found that she had been hospitalized for severe infections only three times since 1995. Treatment for intervening infections only required oral antibiotics. The Court can find no evidence of Holland experiencing severe infections three times within a five month period. The Court accordingly finds that the ALJ's decision is based on substantial evidence.

**3. Considering listings in combination**

The ALJ specifically found that Holland's impairments, "singly or in combination, [d]o not meet or equal a listed impairment." (Administrative Record ("A.R.") 21). When a claimant has a combination of impairments, the medical record may show that the combined impairments equal the elements of a listed impairment most similar to the claimant's most severe impairment. *Sullivan v.*

*Zebley,* 493 U.S. 521, 531, 110 S.Ct. 885, 891–92, 107 L.Ed.2d 967 (1990); Timothy E. Travers, *Social Security Law and Practice* Vol. 3, § 42:9 (1987). A claimant whose most severe impairment is not affected by the claimant's other impairments does not, however, have a combination of impairments equal to a listed impairment. Travers, *Social Security Law and Practice* Vol. 3, § 42:9.

In the present case, the medical record bears little on the relationship between Holland's pulmonary disease and her immunoglobulin deficiency. Although immunoglobulin IgA is considered the most important immunoglobulin in protecting mucosal surfaces from invasion by pathogenic bacteria and viruses, Dr. Reed opined in 1997 that IgA deficiencies do not typically cause the clinical spectrum presented by Holland. American Jurisprudence, Proof of Facts, 3d Series, *Taber's Cyclopedic Medical Dictionary* (Clayton L. Thomas, ed.) (15th ed.1986); (A.R.136). Therefore, the Court finds that substantial evidence supports the ALJ's determination that Holland's impairments, when considered in combination, do not meet the listings.

### B. Weighing medical evidence

■■■■ Generally, the ALJ has the discretion to decide which conflicting medical evidence to accept. *Barker v. Shalala,* 40 F.3d 789, 793 (6th Cir.1994). However, as a general rule, treating physicians and specialists are granted greater deference than general practitioners. *See Alvarado v. Weinberger,* 511 F.2d 1046 (1st Cir.1975); *Cline v. Sullivan,* 939 F.2d 560 (8th Cir. 1991); 20 C.F.R. §§ 404.1527(d)(2), (5). The length, frequency, and the nature of the treatment relationship is helpful in determining the weight given to the treating physician's and/or specialist's opinion. 20 C.F.R. §§ 404.1527(d)(2)(i), (ii).

In the present case, the ALJ reviewed the RFC assessments completed by Dr. Reed, Dr. Neal Aguillard ("Aguillard"), and consultive physician Willyn Jenkins ("Jenkins"). Dr. Reed and Dr. Aguillard both completed their medical assessments in May, 1998, and Dr. Jenkins completed his assessment in July of 1999. The ALJ did not credit Dr. Reed's or Dr. Aguillard's evaluations. Holland asserts that the ALJ therefore committed error in favoring a consultive physician's opinion over the opinions of her treating physicians.

The Court finds that both Dr. Reed and Dr. Aguillard are treating physicians. Dr. Reed treated Holland for her pulmonary distress at least seven times in 1997. Similarly, Dr. Aguillard treated Holland for her condition at least nine times in 1997, though most of her visits to him were within a two month window. Both physicians therefore saw Holland frequently, after her onset date of disability, and for complaints relevant to determining her disabled status.

■■■■ If a treating physician's opinion is rejected by the ALJ, the ALJ must present some basis for rejecting it. *Shelman v. Heckler,* 821 F.2d 316, 321 (6th Cir.1987). If the ALJ wishes to reject a medical conclusion, the basis for rejecting it must generally be other medical evidence. *Id.* at 321. The ALJ must first examine the medical record and determine if the medical opinion was based upon sufficient medical data. This involves merely ensuring whether there was a sufficient listing of clinical data in support of the medical conclusion of impairment. *Id.; Harris v. Heckler,* 756 F.2d 431, 435 (6th Cir.1985).

Both Dr. Reed and Dr. Aguillard indicated that Holland's physical capabilities were severely restricted. The ALJ found, however, that Dr. Reed did not document

clinical or laboratory evidence supporting a severe reduction in her physical capability. The ALJ stated that Dr. Reed indicated in his medical notations that in March, 1997 Holland was active and not bothered with a cough, that in June Holland's disease did not progress, and that in August Holland only suffered from a mildly productive cough. The Court finds the ALJ's observations supportable, especially in light of Dr. Reed's failure to indicate in his RFC assessment any basis for his conclusions.

As to Dr. Aguillard, he based his assessment on a pulmonary function test that indicated Holland's performance was only fifty-four percent of her predicted performance. This result reflected Hollands forced vital capacity, or "FVC." However, as the ALJ noted, Dr. Aguillard's observations were not based on the entire record. A FVC test administered at a later date indicated improvement in Holland's performance, at sixty-three percent of her predicted performance. As .opposed to both Dr. Reed and Dr. Aguillard, Dr. Jenkins based his RFC on the entire record, which reveals Holland's improved respiratory performance. Therefore, the Court finds that the ALJ did not error as a matter of law in crediting Dr. Jenkins' assessment over the assessment of Dr. Reed and Dr. Aguillard.

### C. Non-exertional Limitations

 Holland states that the ALJ erred in failing to consider Holland's non-exertional limitations in determining Holland's ability to perform work in the national economy. Holland contends that her ability to perform light work is precluded by her need to avoid environmental irritants, such as fumes, dust, chemicals, and temperature extremes. Holland first asserts that the ALJ erred in not separately evaluating the effect each environmental irritant has on Holland's respiratory system,

citing Social Security Ruling ("SSR") 96–9p, 1996 WL 374185 (July 12, 1996) in support.

SSR 96–9p, however, only requires that the ALJ must indicate the presence and degree of any specific limitations and restrictions. 1996 WL 374185, at *5, *9. For example, an ALJ must indicate whether only excessive or small amounts of environmental irritants be avoided by the claimant. *Id.* at *9. In the present case, the ALJ indicated that Holland suffered from non-exertional limitations, in that she needed to avoid exposure to concentrated fumes, dust, chemicals and temperature extremes. The ALJ's description of Holland's impairment is therefore consistent with SSR 96–9p, as it indicates which environmental irritants are to be avoided by Holland, and to what degree.

 Holland next asserts that the ALJ's assessment of the severity of Holland's non-exertional impairment is not based on substantial evidence. However, neither Dr. Reed nor Dr. Aguillard assert that slight exposure to environmental irritants exacerbate her condition. Dr. Steve Cole, who treated Holland for allergies, only found her allergic to grass, mold, feathers, and cockroaches. Dr. Jenkins was the only physician who indicated the degree as to which Holland must avoid environmental irritants, opining that Holland should avoid concentrated exposure to environmental hazards, such as machinery and heights. In addition, Dr. Jenkins stated that Holland's condition would be unaffected by fumes, dust, and changes in temperature. Therefore, the ALJ's conclusion that Holland, in light of her respiratory distress, must avoid concentrated amounts of certain environmental irritants finds substantial support in the record.

 Finally, Holland asserts that the ALJ erred as a matter of law in applying Vocational Rule 202.20, App. 2, Pt. 404,

Subpt. P in determining whether her impairments precluded her from working in the national economy. The ALJ found that Holland was a younger individual with a high school education who did not have any skills readily transferable to other occupations. The ALJ determined that Holland had the ability to lift twenty pounds occasionally and ten pounds frequently, and that she can stand or walk at least six hours in an eight-hour day, and sit for six. In light of these factors, the ALJ concluded that Holland's RFC limited her to light work activity. The ALJ then determined that application of Rule 202.20 suggested that she was not disabled, even though Holland was required to avoid exposure environmental irritants in concentrated amounts

The guidelines explain that an ALJ must first determine whether a finding of "disabled" may be possible based on the strength limitations alone. App. 2, Pt. 404, Subpt. P, 200.00(e)(2). The ALJ first determined that Holland's physical impairments restrict her to light duty. This determination is consistent with the regulations. Light work involves lifting no more than twenty pounds at a time with frequent lifting of objects ten pounds in weight, and involves, to a substantial degree, a good deal of walking or standing. § 404.1567(b). The ALJ's determination of Holland's RFC is consistent with these criteria. Accordingly, under Rule 202.20, which refers to a younger person restricted to light work with a high school education who has no previous work experience, Holland would not be disabled.

Next, as the ALJ stated in the instant case, the Rules are to be considered as a framework to assess how much the claimant's work capability is further eroded by non-exertional limitations. App. 2, Pt. 404, Subpt. P, 200.00(e)(2). Only where there is more than a slight impact on the claim-

ant's ability to perform the full range of the claimant's occupational base must the ALJ cite examples of jobs that the claimant can perform. SSR 96–9p, 1996 WL 374185, *5.

Few occupations in the unskilled sedentary occupational base require work in environments involving temperature extremes, and therefore, even a need to avoid all exposure to these conditions would not, by itself, result in a significant erosion of the occupational base. Id. at *9. Further, where a claimant must only avoid concentrated amounts of environmental irritants, the impact on the broad world of work is minimal. SSR 85–15, 1985 WL 56857, *7 (1985). Accordingly, Holland's restriction from working around concentrated amounts of environmental irritants only slightly impacts her ability to perform a full range of light work. The ALJ was therefore correct in using 202.20 as a framework for his determination that, in light of Holland's exertional and non-exertional impairments, she was not disabled. Pt. 404, Subpt. 4, App.2 2.00(e)(2); SSR 85–15, 1985 WL 56857, *7 (1985).

### D. Weighing subjective evidence

 Holland also asserts that the ALJ erred in rejecting the subjective testimony of Holland and her mother, Cynthia Holland ("C.Holland"). An ALJ, however is only required to give perceptible weight to lay testimony where such testimony is fully supported by the reports of the treating physicians. Lashley v. Secretary of HHS, 708 F.2d 1048, 1054 (6th Cir.1983). In the present case, as discussed, the ALJ did not err in discrediting the treating physicians' RFC assessments. Instead, the ALJ found that Holland's RFC reflected the ability to perform light work. Activities involved in performing light work are inconsistent with C. Holland's observations. C. Holland testified that her

daughter cannot drive and can barely walk. Not only does this assessment conflict with the ALJ's RFC evaluation, but it conflicts with the more restrictive RFC assessments completed by Holland's treating physicians. Accordingly, the Court finds that the ALJ's decision to disregard C. Holland's subjective testimony was not in error.

## IV. Order

The Court finds that the ALJ did not err in concluding that Holland's impairments did not meet the listings. The Court also finds that substantial evidence supports the ALJ's decision to favor the consulting physician's opinion over the treating physicians' opinions, and to disregard C. Holland's subjective testimony. Finally, the Court finds the ALJ properly considered Holland's non-exertional limitations in determining Holland's ability to perform work in the national economy. Accordingly, the Court **DENIES** Holland's appeal of the Secretary's decision denying her disability benefits.