NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 04a0137n.06
Filed: December 1, 2004

No. 03-2475

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| CINDRA HICKEY-HAYNES, | ) | |
| | ) | |
| Plaintiff-Appellant | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| JO ANNE B. BARNHART, | ) | EASTERN DISTRICT OF MICHIGAN |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY | ) | |
| | ) | |
| Defendant-Appellee | | |

BEFORE: SILER, BATCHELDER, AND ROGERS, Circuit Judges

**ROGERS, Circuit Judge.** The Social Security Administration denied Cindra Hickey-Haynes' application for Disability Insurance Benefits ("DIB"). At a subsequent hearing, an administrative law judge concluded that Hickey-Haynes' kidney disease did not render her disabled, because she retained a residual functional capacity ("RFC") to perform sedentary jobs full-time. This conclusion resulted in part from what the ALJ found to be a dispute among physicians: two treating physicians deemed Hickey-Haynes disabled; two other doctors, a treating nephrologist and a Social Security consultant physician, did not. Because the ALJ correctly applied the treating physician rule, giving good reasons for declining to give controlling weight to two treating physicians' assessments, and because substantial evidence in the record supports the RFC the ALJ assigned to Hickey-Haynes, we affirm the decision of the district court.

**BACKGROUND**

When the ALJ heard Hickey-Haynes' disability claim, she was forty-five years old. She holds an associate's degree in electronics engineering. Before the onset of kidney disease, her alleged disability, in 1999, Hickey-Haynes held two jobs as a lab technician, first in a photo lab and, from 1992 to 2000, in a metals lab. A vocational expert who testified at Hickey-Haynes' hearing classified these jobs as semiskilled. Both jobs required her to stand for a significant part of the day. Hickey-Haynes began to experience pain and fatigue in 1994 and was diagnosed with kidney disease two years later. She ceased work at the metals lab on November 15, 1999; Hickey-Haynes, her boss, and one of her treating physicians had agreed that she was too weak to continue working at that point. Her employer had adjusted her job duties so that she could sit down more, but she still fatigued too quickly to perform the tasks adequately.

Hickey-Haynes' two family doctors, Dr. Varner and Dr. Pietrus, agreed that she should be eligible for disability. Dr. Varner, Hickey-Haynes' original family doctor, is a specialist in occupational medicine who treated Hickey-Haynes until 1999. He recommended on April 12, 2000, that she be eligible for total disability because she had suffered bouts of fatigue and pain so profound that she had been unable to attend work regularly. On Dr. Varner's retirement in 1999, Hickey-Haynes began seeing another family doctor, Teresa Pietrus. In her treatment notes, Dr. Pietrus concluded that Hickey-Haynes' kidney disease caused extreme fatigue and edema, and that Hickey-Haynes had developed depression as a byproduct. Dr. Pietrus agreed to perform for the Social Security Administration an assessment of Hickey-Haynes' residual capacity to work. Dr. Pietrus

concluded on December 18, 2000, that Hickey-Haynes was totally disabled because of chronic fatigue and other side effects of the kidney disease. Dr. Pietrus also indicated, however, that Hickey-Haynes could stand or walk two to four hours in an eight-hour day, and that Hickey-Haynes could do a limited amount of pushing, pulling or bending on the job. In response to a question asking whether Hickey-Haynes could work a full day without lying down or taking breaks, Pietrus wrote, "not without breaks."

Two other doctors, however, concluded that Hickey-Haynes was not disabled. Dr. M.A. Bashir was Hickey-Haynes' treating kidney specialist from 1996 to 2002. He originally diagnosed Hickey-Haynes with nephrotic syndrome and fibrillary glomerulonephritis ("GN"). His notes report Hickey-Haynes' main symptoms as fatigue, pain in the extremities, and edema. The notes show that Hickey-Haynes' condition remained stable until January 2002, when Bashir noted a "worsening of the renal function," which "could be from the progression of her underlying renal disease." Unlike Dr. Pietrus, Dr. Bashir declined to complete a Social Security form evaluating Hickey-Haynes' eligibility for benefits. Portions of the record, however, suggest that he concluded that Hickey-Haynes was not disabled. On April 4, 2000, during the same month Hickey-Haynes applied for DIB, Dr. Bashir noted that she was "doing very well from a renal standpoint." A year and a half earlier, in October 1998, Dr. Bashir concluded that Hickey-Haynes' "excessive weakness likely is related to prolonged standing and working environment. She will benefit from more sedentary work." In

addition, Dr. Varner's and Dr. Pietrus' notes state that Dr. Bashir considered Hickey-Haynes able to return to work.[1]

Dr. Siddall, a non-treating physician, performed an RFC assessment on behalf of the Social Security Administration in which he concluded that Hickey-Haynes was able to sit or stand about six hours in an eight-hour workday, and that she could lift light objects. Siddall concluded that the agency could not put "any weight" on the opinion of Dr. Varner that Hickey-Haynes was disabled. He also checked a box indicating he considered Hickey-Haynes' stated symptoms only "partly credible," but that there were no "major discrepancies" between her account and the medical evidence.

Hickey-Haynes applied for DIB on April 15, 2000. The Social Security Administration rejected her application. The agency found that Hickey-Haynes' kidney disease impeded her from performing a job that requires lifting and carrying, such as her metals lab job, but that she could still perform her less strenuous previous job of photo lab technician. Hickey-Haynes requested a hearing; on April 16, 2002, ALJ Regina Sobrino held a hearing at which Hickey-Haynes testified and was represented by counsel. A vocational expert also testified at the hearing.

On April 24, 2002, the ALJ issued a decision finding that Hickey-Haynes was not disabled. The ALJ found that Hickey-Haynes was unable to perform either of her previous two jobs, because they required too much standing and lifting, but that she retained an RFC permitting her to perform

---

[1]The ALJ's opinion states, "Dr. Bashir's office notes on April 10, 2000 indicate that the doctor felt the claimant was ready to return to work." The record contains no office records from this date from Dr. Bashir. It is likely the ALJ was actually referring to Dr. Varner's office notes for that date, which state, "Dr. Bashir feels pt. able to return to work."

sedentary clerical jobs. The ALJ found conflicts between the opinions of Dr. Bashir, who found Hickey-Haynes not to be disabled, and those of Drs. Pietrus and Varner, who stated she should be entitled to DIB. The ALJ's decision gave more weight to Dr. Bashir's opinion than to the other doctors' in formulating Hickey-Haynes' RFC.

Hickey-Haynes filed a complaint in the United States District Court for the Western District of Michigan, in which she averred that the ALJ's determination of non-disability was legally in error and not supported by substantial evidence. A magistrate judge recommended remand of the matter to the agency, finding that the ALJ had treated too dismissively the opinions of Drs. Varner and Pietrus, and too hastily concluded that Dr. Bashir had deemed Hickey-Haynes disabled. The district judge, however, rejected the report and recommendation, and affirmed the final decision of the Commissioner. Hickey-Haynes timely appealed.

## ANALYSIS

The ALJ correctly applied the treating physician rule. She properly decided not to give controlling weight to two treating physicians' opinions, because substantial evidence in the record contradicted them. Further, she correctly applied factors listed in the relevant regulation to determine how much weight to give each treating physician's opinion. Substantial evidence–-including the opinions of a treating expert and a Social Security consulting physician, as well as some of Hickey-Haynes' own statements about her physical abilities–-supported the ALJ's conclusion that Hickey-Haynes was not disabled. Finallly, remand is inappropriate, since no new

evidence has arisen since the adjudication, and the ALJ supplied good reasons for not according controlling weight to Dr. Varner's and Dr. Pietrus' opinions.

## 1.     Standard of Review

This court in a Social Security appeal determines whether the ALJ failed to apply the correct legal standard and whether the ALJ's findings of fact were supported by substantial evidence. 42 U.S.C. § 405(g) (2001); *Garner v. Heckler,* 745 F.2d 383, 387 (6th Cir. 1984). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Garner,* 745 F.2d at 388 (citation omitted). The reviewing court "may look to any evidence in the record, regardless of whether it has been cited by the [agency]." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). A reviewing court may affirm the ALJ's conclusion even if substantial evidence also supports the opposite conclusion. *Her v. Comm'r of Soc. Sec.,* 203 F.3d 388, 389-90 (6th Cir. 1999).

In addition, because this case involves the treating physician rule, the reviewing court must also evaluate whether the ALJ's decision gave "good reasons" for failing to give controlling weight to a treating physician's opinion, as required by the governing regulation. *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2) (2004)).

## 2.     How Disability Benefits Are Determined

In assessing whether a claimant is entitled to DIB, the ALJ engages in the following five-step inquiry:

1.  Is the claimant currently engaged in substantial gainful activity? If so, she is not disabled.
2.  Does the claimant have a severe physical or mental impairment that limits the claimant's physical or mental ability to do basic work activities, and will foreseeably result in death or last at least twelve months? If not, she is not disabled.
3.  Does the claimant's impairment fall into a category listed at 20 C.F.R. § 404.1520, appendix 1? If so, she is disabled, and the inquiry may end without inquiry into vocational factors.
4.  Does the claimant retain a residual functional capacity to perform her past relevant work? If so, she is not disabled.
5.  Does the claimant retain a residual functional capacity to perform other work in the economy?

20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proving elements (1)–(4). Once the claimant has demonstrated the extent of her residual functional capacity, the Commissioner carries the burden of showing that jobs in the economy may accommodate that RFC. *Her,* 203 F.3d at 391-2.

**3.     Application of the Treating Physician Rule**

The ALJ determined Hickey-Haynes not to be disabled based on the fourth and fifth prongs of the disability test: she found that Hickey-Haynes had a residual functional capacity that allowed her to perform some sedentary work, but not her past jobs; and a vocational expert testified that this RFC would qualify Hickey-Haynes for a significant number of jobs in the regional economy. In reaching this conclusion, the ALJ applied the correct factors in deciding how much weight to accord the opinion of each treating physician. *See* 20 C.F.R. § 404.1527(d). Under the treating physician rule, opinions of physicians who have treated the claimant receive controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." *Id.* § 404.1527(d)(2). If the

adjudicator finds either of these criteria unmet, she is required to apply the following factors in determining how much weight to give a treating physician's opinion: "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source . . . ." *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)).

Hickey-Haynes urges an incorrect standard when she argues that Dr. Varner's and Dr. Pietrus' opinions regarding Hickey-Haynes' debilitating fatigue deserve controlling weight because they are not contradicted by Dr. Bashir's opinion. The regulation requires ALJs to look to the record *as a whole*—not just to medical opinions—to decide whether substantial evidence is inconsistent with a treating physician's assessment. *See* 20 C.F.R. § 404.1527(d)(2), (4). The ALJ could properly find, under this standard, that Dr. Varner's and Dr. Pietrus' opinions were not entitled to controlling weight.[2]

Dr. Varner recommended total disability because of Hickey-Haynes' "episodes of profound fatigue," while Dr. Pietrus stated in her RFC assessment that Hickey-Haynes could not perform a full-time job without breaks. The following items in the record exhibit some tension with these observations. First, both Hickey-Haynes' and her husband's records of her daily activities, prepared

---

[2]The ALJ's decision suggested that she may have confused the first and second prongs of the treating physician rule, in that she stated Dr. Varner's and Dr. Pietrus' conclusions were contradicted by "clinical findings and test results." J.A. at 12. Her *application* of the test, however, was correct, in that she cited non-medical record evidence (Hickey-Haynes' own statements relating to her fatigue), as well as medical evidence (Dr. Bashir's conclusions), in explaining her decision not to grant controlling weight to Varner's and Pietrus' opinions.

as part of her disability application, suggest that she normally intersperses active household chores with sedentary activities such as computer work. Second, a non-treating physician who examined Hickey-Haynes, Dr. John Siddall, found that Hickey-Haynes' statements concerning fatigue were only partly credible, and that she could stand, walk or sit with only normal breaks for six hours in an eight-hour workday. Finally, Dr. Bashir's observations—both those recorded in his office notes and those attributed to him in Dr. Varner's and Dr. Pietrus' office notes—show that he doubted Hickey-Haynes would suffer debilitating fatigue if placed in a sedentary job. *See* J.A. at 177 ("The patient's major complaint remains excessive tiredness although her renal function has remained stable. . . . Her excessive weakness likely is related to prolonged standing and working environment . . . . She will likely benefit from more sedentary work."); *id.* at 133, 163 (other physicians' notes indicating Bashir believes Hickey-Haynes is ready to work)[3].

The ALJ proceeded to apply the correct legal standard in deciding how much weight to accord each doctor's opinion. Although the ALJ did not specify her logic, the influence of each doctor's opinion on her decision comports with 20 C.F.R. § 404.1527(d), which provides the criteria that the ALJ must apply in evaluating a treating physician's opinion when she decides not to it give controlling weight. By rejecting Dr. Pietrus' and Dr. Varner's prognosis of disabling fatigue, the

---

[3]Hickey-Haynes argues that Dr. Varner's and Dr. Pietrus' notations of Dr. Bashir's opinion constitute "double hearsay," which should not weigh against the former doctors' recorded observations in the adjudicator's determination. In Social Security cases, however, "[h]earsay . . . is admissible up to the point of relevancy." *Richardson v. Perales,* 402 U.S. 389, 410 (1971). The Court in *Richardson* noted that doctors' hearsay opinions should not be excluded unless "the specter of questionable credibility and veracity is . . . present." *Id.* at 407. Varner and Pietrus had no motivation to state falsely in their treatment notes that Bashir's assessment differed from theirs.

ALJ placed considerable credence in Dr. Bashir's view that Hickey-Haynes could adapt to a sedentary job.[4] Ultimately, whether the fatigue induced by Hickey-Haynes' kidney disease barred her from full-time work formed the determinative issue in her case. It is reasonable that treating physician Bashir's opinion on this issue–-that this question should be answered "no"—received greater weight than Pietrus' or Varner's. Bashir, unlike Pietrus and Varner, is a kidney disease specialist. *See* 20 C.F.R. § 404.1527(d)(5). Further, Bashir saw Hickey-Haynes more frequently and for a longer time period than either Varner or Pietrus, and he performed more tests on her. *See id.* § 404.1527(d)(2)(i)–(ii). Finally, Bashir's opinion was consistent with other record evidence–- Sidall's assessment and evidence concerning Hickey-Haynes' daily activities—while Pietrus' and Varner's portrayal of debilitating fatigue cut against this evidence. *Id.* § 404.1527(d)(4).

The ALJ also, however, factored the views of Drs. Varner and Pietrus into her RFC findings, which is appropriate since these two physicians treated Hickey-Haynes on an extended basis. The ALJ placed some weight on Dr. Pietrus' opinion about Hickey-Haynes' work capacity, in that she combined findings from Dr. Pietrus' and Dr. Siddall's RFC assessments in her own RFC determination. *See* J.A. at 12 (concluding Hickey-Haynes can stand or walk only two to four hours per day, as Dr. Pietrus indicated, and not six hours, as Dr. Siddall indicated). She also credited Dr. Varner's observations of fatigue in her description of Hickey-Haynes' symptoms.

---

[4]The Commissioner argues that the ALJ properly gave controlling weight to Dr. Bashir's opinion. The decision does not, however, suggest that Dr. Bashir's opinion received controlling weight in the ALJ's RFC assessment. Three doctors' opinions—Dr. Siddall's and Dr. Bashir's conclusions that Hickey-Haynes could perform a sedentary job, and Dr. Pietrus' and Dr. Bashir's conclusions that Hickey-Haynes had a limited ability to stand and walk as part of her job—contributed to the finding on Hickey-Haynes' RFC.

**4.      The Requirement of "Good Reasons" for the ALJ's Decision**

Even where a reviewing court finds that substantial evidence supports the ALJ's decision, the agency's regulations require the ALJ to give "good reasons" for a decision not to give controlling weight to a treating physician's opinion. 20 C.F.R. § 404.1527(d)(2); *see Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 545 (6th Cir. 2004). The ALJ's decision adequately explains why the she refused to give controlling weight to Dr. Pietrus' and Dr. Varner's opinions about Hickey-Haynes' occupational capacity: the opinions were inconsistent with both another treating physician's opinion and other record evidence. The ALJ did not label the amount of weight given to each treating physician's view or list the factors in 20 C.F.R. § 404.1527(d) to explain that conclusion, but her decision shows familiarity with the regulatory framework by emphasizing that Bashir is a specialist who treated Hickey Haynes for a long period of time. Even assuming, for the sake of argument, that the ALJ did not technically meet the procedural requirement to give "good reasons," this was harmless error; the reasoning behind her use of each physician's opinion is clear. *See Wilson,* 378 F.3d at 548 (suggesting that error would be harmless where "the Commissioner has met the goal of § 1527(d)(2) . . . even though she has not complied with the terms of the regulation.")

**5.      Hickey-Haynes' Challenge to the Sufficiency of the Evidence**

Having found the ALJ applied the correct law, we must address whether her findings of fact met the substantial evidence threshold. Hickey-Haynes claims that the ALJ erred in finding, at stage four of the disability determination, that Hickey-Haynes retained an RFC to perform full-time work.

Substantial evidence is a fairly low bar: more than a mere scintilla, yet enough that "a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of New York v. NLRB,* 305 U.S. 197, 229 (1938). Here, substantial evidence supported the ALJ's decision. The medical record contains contradictory views of the relationship between Hickey-Haynes' kidney disease and her physical weakness, and some of Hickey-Haynes' own statements belied a finding of total disability to perform full-time work.

The ALJ's RFC finding may "consider all of the medical and nonmedical evidence." 20 C.F.R. § 404.1545(e). An RFC is the assessment of the claimant's maximum remaining capacity to perform work-related activities despite the physical and mental impairments caused by her disability. Soc. Sec. Ruling 96-8p, 61 Fed. Reg. 34474, 34475 (Jul. 2, 1996). The ALJ concluded that (1) Hickey-Haynes could stand or walk two to four hours per day, and thus could not perform either of her previous jobs; (2) she had very limited abilities to climb, lift, and carry; (3) she required ready access to bathroom facilities but did not require special bathroom accommodations; and (4) her kidney disease caused fatigue, but the fatigue was not so severe that she required hourly breaks preventing her from working full-time. Hickey-Haynes contests only the latter two findings.

Substantial evidence supported the ALJ's conclusion that Hickey-Haynes did not require a special bathroom accommodation. Neither Dr. Pietrus' nor Dr. Siddall's RFC assessment includes this restriction. Also, Dr. Bashir's office notes suggest that Hickey-Haynes' problem of frequent urination could be eased by regulating her medications and fluid intake.

Though it is a closer question, the ALJ's conclusion regarding whether Hickey-Haynes

suffered debilitating fatigue is also buttressed by substantial evidence in the record. Dr. Bashir

concluded that the physically strenuous nature of Hickey-Haynes' previous position fully explained

her fatigue problems at work.[5] Further, Dr. Siddall, a Social Security consultant physician, noted

that Hickey-Haynes' complaints of fatigue were not fully credible. In addition, Hickey-Haynes' and

her husband's descriptions of her fairly active daily schedule weighed against a finding that she

suffered debilitating fatigue. Perhaps most persuasively, the ALJ, uniquely positioned to judge the

credibility of Hickey-Haynes' testimony, found that her complaints of disabling pain and fatigue

---

[5]On appeal, Hickey-Haynes argues that Bashir's medical opinion should receive no weight because (1) the ALJ erred in finding that Dr. Bashir had stated in his own treatment notes that he believed Hickey-Haynes should return to work, when in fact the only statements to this effect are contained in Dr. Varner's and Dr. Pietrus' treatment notes; (2) the opinion in Bashir's notes that Hickey-Haynes could perform a sedentary job predated her application for disability by a year and a half; and (3) Dr. Bashir's treatment notes attest to the acceleration of her kidney disease over the course of six years. The fact that *both* the other treating physicians' notes comment that Bashir found Hickey-Haynes to be ready to return to work, however, lends credibility to these comments; further, treatment notes have indicia of credibility as accurately reflecting both that physician's opinions and his or her correspondence with the other physicians. *See Richardson v. Perales,* 402 U.S. 389, 407 (1971). Also, although Bashir's conclusion that Hickey-Haynes would "benefit from sedentary work" dates to 1998, his treatment notes through 2000, when Hickey-Haynes applied for disability, suggest he felt her condition was stable. *See* J.A. at 168.

Nonetheless, the fact that Bashir noted a marked decline in Hickey-Haynes' kidney functioning from 2000 to 2002, when the ALJ heard her claim, casts some doubt on the continuing persuasiveness of his skepticism toward Hickey-Haynes' fatigue in the 1998–2000 period. This asserted weakness is counterbalanced, however, by the fact that Dr. Bashir was the only treating physician who was a kidney specialist and who could therefore gauge to what extent Hickey-Haynes' illness really caused the debilitating fatigue of which she complained. His treatment notes reflect an opinion that there was a causal relationship between Hickey-Haynes' kidney disease and her fatigue, but also that her illness did not fully account for the intensity of the fatigue she described.

were not fully believable in light of both the medical record and statements she made in her disability application.

**6.      Whether Remand Is Necessary**

Hickey-Haynes argues that, because there are factual disputes concerning Dr. Bashir's opinion about Hickey-Haynes' residual functional capacity, this disability determination should be remanded to the agency. A reviewing court may remand a Social Security claim to the agency when new material evidence has arisen since the claimant's hearing, or when the reviewing court finds that the ALJ failed to provide reasons for rejecting a treating physician's opinion. 42 U.S.C. § 405(g); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2004) (quoting *Halloran v. Barnhart*, 362 F.3d 28, 32-33 (2d Cir. 2004)). Neither of these situations applies here. Because Dr. Bashir declined to complete an RFC assessment on Hickey-Haynes' behalf, the ALJ as fact-finder gleaned his views on Hickey-Haynes' physical limitations by reviewing his treatment notes, as well as comments about his opinions in other doctors' treatment notes. Substantial evidence supported the ALJ's conclusions regarding the content of Dr. Bashir's medical opinion.

**CONCLUSION**

For the foregoing reasons, we AFFIRM the decision of the district court.