NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0313n.06
Filed: May 30, 2008

No. 07-1130

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| KEITH P. GASKIN, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellant, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| v. | ) | DISTRICT OF MICHIGAN |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | **O P I N I O N** |
| | ) | |
| Defendant-Appellee. | ) | |

BEFORE:    DAUGHTREY, CLAY, and McKEAGUE, Circuit Judges.

**McKEAGUE, Circuit Judge.**  In this appeal, Keith P. Gaskin ("Gaskin") argues that the district court erroneously affirmed the Commissioner of Social Security's ("Commissioner") denial of disability insurance benefits.  According to Gaskin, the Administrative Law Judge ("ALJ") improperly rejected the opinion of his treating physician and portions of a consulting physician's opinion.  Gaskin also alleges that the ALJ erred in finding that Gaskin was not credible and discrediting his subjective complaints of disabling pain.  The district court rejected all of these arguments.  We find no error in that determination and **AFFIRM** for the reasons set forth below.

## I.  BACKGROUND

At the time of filing his disability application, Gaskin was thirty-six years of age.  He had earned his GED, and was previously employed as a cook, laborer, mail handler, and press operator.  According to Gaskin, he was rendered disabled as of May 15, 2002, by a back injury that he suffered while lifting automotive parts at work.  The Commissioner initially denied his application on

October 10, 2003, and Gaskin sought an administrative hearing. A hearing was held before an Administrative Law Judge ("ALJ") who later issued an opinion finding that Gaskin was not disabled under the Social Security Act. In making that determination, the ALJ comprehensively discussed the medical evidence and employed the five-step sequential analysis required by 20 C.F.R. §§ 404.1520, 416.920.

Applying the five-step analysis, the ALJ concluded at steps one and two that Gaskin was not engaged in any gainful activity, and his back injury constituted a "severe impairment." However, at step three the ALJ found that Gaskin's back injury did not meet or equal an impairment listed in Appendix 1 to Subpart P of the regulations. At step four, the ALJ held that Gaskin's back injury precluded him from performing his past work. Moving to step five, where the burden of proof shifts to the Commissioner, the ALJ concluded that the objective medical evidence demonstrated Gaskin possessed the residual functioning capacity ("RFC") to "lift and carry 20 pounds occasionally and 10 pounds frequently, stand/walk 4 hours in an 8-hour workday, sit 4 hours in an 8-hour workday with a stand/sit option, and occasional climbing, balancing, stooping, kneeling, crouching, and crawling." In response to a hypothetical question incorporating this RFC, a vocational expert testified that Gaskin could perform approximately 5,600 light work jobs and approximately 6,500 sedentary jobs in southeast Michigan. Based on this information, the ALJ concluded that Gaskin was not disabled.

The Social Security Appeals Council declined Gaskin's request for review, and the ALJ's opinion became the final decision of the Commissioner. Gaskin then sought judicial review of the ALJ's decision in the United States District Court for the Eastern District of Michigan. The case was

referred to Magistrate Judge Virginia Morgan who recommended that summary judgment be granted

for the Commissioner. Over Gaskin's objections, Judge Avern Cohn issued an opinion adopting the

magistrate's recommendation. Gaskin, proceeding *pro se*, filed a timely notice of appeal with this

court.

## II.  ANALYSIS

### A.  Standard of Review

We review an ALJ's denial of disability benefits under the substantial evidence standard.

42 U.S.C. § 405(g); *see also Shelman v. Heckler*, 821 F.2d 316, 319 (6th Cir. 1987). "Substantial

evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion." *Shelman*, 821 F.2d at 320 (internal quotations omitted).

Under this highly deferential standard, "it is not necessary that this court agree with the

Commissioner's finding, as long as it is substantially supported in the record." *Rogers v. Comm'r*

*of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

### B.  ALJ's Rejection of Physician Opinions

Gaskin's chief argument on appeal is that the ALJ improperly disregarded the opinion of Dr.

Richard Brown, his treating physician, and portions of the opinion of Dr. A. Pennington, a consulting

physician who examined Gaskin on behalf of the State of Michigan. This argument lacks merit.

The opinions of a treating physician are generally afforded "substantial, if not controlling,

deference." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). However, such

deference is only appropriate where the treating physician's opinion is "well-supported by medically

acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial

evidence in the case record." *Rogers*, 486 F.3d at 242 (internal quotations and alterations omitted); *accord* 20 C.F.R. § 404.1527(d)(2). The opinion of a non-treating physician is entitled to, "if anything, less deference than the treating physician's opinion." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). A physician's opinion that a claimant is disabled is entitled to no deference because it is the prerogative of the Commissioner, not the treating physician, to make a disability determination. *See Warner*, 375 F.3d at 390; *see also Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007) (stating that "no special significance will be given to opinions of disability, even if they come from a treating physician") (internal quotations omitted). Whenever a treating physician's opinion is disregarded, the ALJ must provide "good reasons" for doing so. *Rogers*, 486 F.3d at 242. This requirement ensures that "the ALJ applies the treating physician rule," and it "permits meaningful appellate review of the ALJ's application of the rule." *Id*. at 243 (internal quotations omitted).

According to Gaskin, the ALJ violated the treating physician rule by disregarding the opinion of Dr. Brown. Dr. Brown is a primary care physician who began treating Gaskin for back pain in 2002. In his notes, Dr. Brown opined that Gaskin should refrain from working because he suffered from what Dr. Brown believed was a herniated disc. Furthermore, Dr. Brown submitted a brief letter to the Commissioner stating that Gaskin cannot "sit for any period of time, stand for any short period of time and [is] unable to deal with a combination of the two positions while working." Dr. Brown did not tie the statements in his letter to any particular objective findings or medical evidence. Much to the dismay of Gaskin, the ALJ rejected Dr. Brown's opinion because, according to the ALJ, it was

not supported by objective medical evidence, it contradicted Dr. Brown's own treatment notes, and the determination of whether Gaskin is able to work is a decision reserved to the Commissioner.

Looking at the ALJ's opinion and the entirety of the record, we find no error in the ALJ's refusal to defer to Dr. Brown's opinion. Aside from the fact that the portion of Dr. Brown's opinion indicating Gaskin cannot work is entitled to no deference because it addresses an issue that is reserved to the Commissioner, his opinion regarding Gaskin's condition was also appropriately rejected because it contradicted numerous other pieces of evidence in the record. First, Dr. Brown's own notes, as well as the report of Dr. R.E. Olson, a neurologist to whom Dr. Brown referred Gaskin, indicate that Gaskin had normal neurological function. Second, Dr. Olson concluded that, contrary to the opinion of the reviewing radiologist, Gaskin's MRI showed a bulging disc, not a herniated disc. Furthermore, Dr. Olson stated that the areas in which Gaskin claimed to be experiencing pain did not correlate well with what was shown on the MRI. Dr. Olson, therefore, concluded that surgery was not warranted. Third, despite claiming that he spends the overwhelming majority of his time lying down, Gaskin exhibited normal muscle strength in his legs and no neurological defects. In fact, according to Dr. LaBan, a physical medicine specialist who examined Gaskin on several occasions, he possessed normal strength in his quadriceps. Fourth, Dr. Olson indicated that Gaskin was able to successfully bend forward and touch his ankles. Fifth, Dr. Brown's opinion that Gaskin could not sit for *any* period of time was contradicted by the opinions of Drs. Pennington and Nahata. Finally, Dr. Nahata, the most recent physician to evaluate Gaskin, indicated that straight leg-raising was negative, Gaskin's hip strength was rated 4+/5 and the rest of his lower

extremity muscles were rated 5/5, a spinal X-ray was normal, and his radiculopathy had been resolved.

Because Dr. Brown's opinion is "inconsistent with other substantial evidence in the case record," *Rogers*, 486 F.3d at 242 (internal quotations omitted), and his conclusion regarding Gaskin's inability to work addresses an issue reserved to the Commissioner, the ALJ did not err in refusing to defer to Dr. Brown's opinion. We have reached this same result in numerous cases involving analogous factual scenarios. *See*, *e.g.*, *Warner*, 375 F.3d at 391-92 (finding that the ALJ properly rejected portions of the treating physician's opinion because it was inconsistent with other evidence in the record); *Turner v. Comm'r of Soc. Sec.*, No. 07-5235, 2008 WL 582603, at *4-5 (6th Cir. Mar. 4, 2008) (concluding in a very similar factual scenario that the ALJ did not err in disregarding the treating physicians' opinions); *Martin v. Comm'r of Soc. Sec.*, 170 F. App'x 369, 372-73 (6th Cir. 2006) (finding no error in the ALJ's failure to defer to the treating physician's opinion because it was contradicted by other physicians and the information in the claimant's medical records); *Ford v. Comm'r of Soc. Sec.*, 114 F. App'x 194, 197 (6th Cir. 2004) (concluding in a factually analogous case that the ALJ properly discounted the treating physician's opinion because it was inconsistent with the other evidence in the record).

Unlike the cases where we have held that the ALJ failed to state "good reasons" for rejecting the treating physician's opinion, here the ALJ did not merely cast aside the treating physician's opinion without explanation. *See*, *e.g.*, *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 749 (6th Cir. 2007) (vacating the Commissioner's denial of disability benefits because the ALJ failed to even mention the contrary opinion of the claimant's treating psychologist). Rather, the ALJ clearly stated

that he was rejecting Dr. Brown's opinion because it was not supported by the medical evidence—which the ALJ set forth in great detail throughout his opinion—and the ultimate determination of disability is a matter reserved to the Commissioner. Accordingly, we believe the ALJ satisfactorily explained his reasons for not deferring to the opinion of Dr. Brown.

To the extent Gaskin argues that the ALJ erred by failing to defer to portions of Dr. Pennington's opinion, we disagree. Dr. Pennington was a non-treating physician whose opinion regarding Gaskin's residual functioning capacity is entitled to, "if anything, less deference than the treating physician's opinion." *Jones*, 336 F.3d at 477. The ALJ explained that he was rejecting Dr. Pennington's limitations on Gaskin's ability to lift weight because it was "vague and not defined, and the postural limitations are extreme in light of the objective findings and treatment records." Furthermore, Dr. Pennington indicated that Gaskin could perform sedentary work, which is necessarily encompassed by the ALJ's finding that he possessed the ability to complete light work, and the vocational expert's testimony that Gaskin was capable of performing approximately 6,500 sedentary jobs in the southeast Michigan area. *See generally* 20 C.F.R. § 404.1567(b), 416.967(b) (indicating that an individual who can perform light work by definition can also perform sedentary work). Thus, even if the ALJ had deferred to Dr. Pennington's opinion, the ultimate result would have been the same: Gaskin does not qualify for disability.

We find it appropriate to point out that the ALJ in this case—like many Social Security disability cases—was confronted with no easy task. He was presented with several different, and at times contradictory, opinions from a number of different physicians with different specialities. Some of these physicians had extensively treated Gaskin, while others examined him only once as

part of the disability process. In reaching his decision, the ALJ reviewed the various opinions, reports, and diagnostic test results. Based on his review of the record, he chose to afford more weight to the opinions of certain physicians than others. Given the number of physicians that examined Gaskin and the variation in their opinions, almost any decision that the ALJ could have rendered would have required him to discredit the opinion of at least one physician. The ALJ thoroughly discussed his reasons for accepting certain opinions and rejecting others, and we cannot say that he committed any error in doing so. *See generally Mullins v. Sect'y of Health & Human Servs.*, 836 F.2d 980, 984 (6th Cir. 1987) (stating that an ALJ confronted with opposing medical opinions did not err in rejecting some of the opinions and accepting others where there was ample support in the record for the opinions he accepted).

## C. Discounting Gaskin's Subjective Complaints

Gaskin also appears to argue that the ALJ improperly discounted his subjective complaints of disabling pain because the ALJ found he was not credible. It is well-established that an ALJ's credibility determinations are entitled to great deference; our review is limited to deciding whether an ALJ's explanations for discrediting a claimant's testimony "are reasonable and supported by substantial evidence in the record." *Jones*, 336 F.3d at 476.

In this case, the ALJ stated that Gaskin's subjective complaints and alleged physical limitations were not supported by the objective medical findings and other evidence in the record. We conclude that this determination was reasonable and supported by substantial evidence. Gaskin testified that he spends the vast majority of his days lying down, lacks the physical ability to perform any household chores, needs help getting out of the bathtub, cannot sit for more than fifteen minutes

in an eight-hour period, and cannot stand for more than ten to fifteen minutes in an eight-hour period. As the ALJ indicated, this testimony is contradicted by the medical reports which fail to indicate that Gaskin has suffered any muscle atrophy, but do indicate that he possesses normal strength in his quadriceps and other muscles in his lower extremities, neither of which one would expect to find in an individual who claims to have been essentially bedridden for several years. There is also no evidence that Gaskin suffered any neurological problems as a result of his injury, which is also contrary to Gaskin's complaints of disabling back pain resulting from a herniated disc. *See generally Blacha v. Sect'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990) (finding no error in the ALJ's finding that the claimant was not disabled in part because he suffered no muscle atrophy despite his claims of inactivity due to severe pain); *see also Crouch v. Sect'y of Health & Human Servs.*, 909 F.2d 852, 857 (6th Cir. 1990) (per curiam) (concluding that the claimant's allegation that he suffered from disabling back pain was not supported by the record because there was no evidence of neurological deficiencies or muscle atrophy). Furthermore, Gaskin's statement that he cannot sit for more than fifteen minutes in an eight-hour day and cannot stand for more than fifteen minutes in an eight-hour day contradicts the reports of several physicians who found that he possessed the ability to stand and sit for considerably longer periods of time. Because substantial evidence in the record contradicts Gaskin's subjective complaints of disabling pain, the ALJ committed no error in discounting Gaskin's testimony.

**D. Effect of Gaskin's Worker's Compensation Award**

In what is akin to a footnote, Gaskin asserts at the conclusion of his brief that he is entitled to Social Security disability because he received Worker's Compensation due to his back injury.

Although technically this argument has been waived because an argument raised in a footnote is not properly before this court, *United States v. Dairy Farmers of Am., Inc.*, 426 F.3d 850, 856 (6th Cir. 2005), to the extent that it is properly before us, we reject it. As the Commissioner's brief points out, the Social Security regulations in place at the time of Gaskin's application specifically provided that the Commissioner "must make a disability . . . determination based on social security law. Therefore, a determination made by another agency that you are disabled . . . is not binding" on the Commissioner. 20 C.F.R. §§ 404.1504, 416.904; *see also Hampton v. Sect'y of Health & Human Servs.*, 972 F.2d 347, 1992 WL 188112, at *1 (6th Cir. 1992) (unpublished table decision) (holding that a claimant is not entitled to Social Security disability "just because he is receiving worker's compensation").

## III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's decision.