NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0500n.06

No. 09-4071

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Aug 12, 2010**
LEONARD GREEN, Clerk

BRUCE COLDIRON,                                )
                                               )
    Plaintiff-Appellant,                    )
                                               )
v.                                             )  ON APPEAL FROM THE UNITED
                                               )  STATES DISTRICT COURT FOR THE
                                               )  SOUTHERN DISTRICT OF OHIO
COMMISSIONER OF SOCIAL SECURITY,               )
                                               )
    Defendant-Appellee.                     )

Before: GIBBONS and COOK, Circuit Judges, and VAN TATENHOVE, District Judge.[*]

COOK, Circuit Judge. The Commissioner of Social Security ("Commissioner") granted Bruce Coldiron Disability Insurance Benefits ("DIB") beginning on November 11, 2004. He now appeals the district court's judgment affirming the Commissioner's denial of DIB for the fifteen-month period between August 1, 2003, and November 11, 2004. Coldiron advances several arguments on appeal, each challenging the Administrative Law Judge's ("ALJ") decision that he could perform sedentary work during the period in question. For the reasons that follow, we reject his arguments and affirm the district court's decision.

_____

[*]The Honorable Gregory F. Van Tatenhove, United States District Judge for the Eastern District of Kentucky, sitting by designation.

I.

Coldiron has a twelfth-grade education. He previously worked as a machine operator, factory worker, truck driver, and pizza delivery driver. Coldiron contends his disability began August 1, 2003, when he underwent rotator cuff surgery on his right shoulder after he slipped and fell on ice. His disability claim relies not on a listed impairment, but on the combination of his impairments—including obesity, diabetes, mild restrictive lung defect, obstructive sleep apnea, right-sided heart failure, degenerative lumbar disc disease, bilateral shoulder acromioclavicular arthrosis joint arthritis with a history of rotator cuff tear, bilateral knee osteoarthritis and depression. His obesity constitutes an overarching factor in his disability claim. At 5'11" and 403 pounds, Coldiron qualifies as morbidly obese.

The Social Security Administration ("Administration") denied Coldiron's claim for benefits under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq*., initially and upon reconsideration. Coldiron then requested a hearing before an ALJ who determined that he suffered from severe impairments, but that such impairments did not individually, or in combination, meet or equal the severity of an impairment described in 20 C.F.R. § 404, Subpt. P, App. 1 (a "listed impairment"). The ALJ also found Coldiron's testimony only partially credible in light of other evidence in the record and Coldiron's behavior at the hearing. According to the ALJ, despite his combined physical impairments, Coldiron retained a residual functional capacity ("RFC") that would permit him to:

No. 09-4071
*Coldiron v. Comm'r of Soc. Sec.*

> Lift/carry and push/pull up to ten pounds occasionally, five pounds frequently; in an eight-hour workday, he can stand/walk a total of two hours (15 minutes at a time, then [he] must be able to sit for two or three minutes) and he can sit for a total of eight hours (one hour at a time, then [he] must be able to stand for two or three minutes); he should never kneel, crouch, crawl, climb ladders, ropes, and scaffolds, or work at unprotected heights; he can only occasionally stoop, climb ramps and stairs, or reach above shoulder level with either upper extremity; he should avoid concentrated exposure to fumes, noxious odors, dust, and gases. Due to depression, he is unable to remember or carry out detailed instructions.

After considering the testimony of a vocational expert, the ALJ determined that Coldiron could not perform his past relevant work, but that his RFC permitted him to perform full-time sedentary work prior to turning age 50,[1] and accordingly denied Coldiron's claim for benefits before his fiftieth birthday in November 2004. Coldiron challenged his disability onset date, contending that he has been disabled since August 1, 2003, but the Appeals Council declined review, making the ALJ's decision the final decision of the Commissioner.

Coldiron sought judicial review in the United States District Court for the Southern District of Ohio under 42 U.S.C. § 405(g). The Magistrate Judge recommended affirming the Commissioner's decision, finding that the ALJ accurately set forth and applied the controlling

---

[1] Once a claimant found capable of performing only sedentary work attains age 50, the Medical-Vocational Guidelines direct the ALJ to find the claimant disabled. 20 C.F.R. § 404, Subpt. P, App. 2, rule 201.12 (2008).

principles of law. The district court adopted the Magistrate Judge's Report and Recommendation, thus affirming the Commissioner's decision. Coldiron now appeals.

II.

We review the district court's decision de novo, *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009), but we will affirm the Commissioner's conclusions absent a determination that the ALJ failed to apply the correct legal standard or made findings of fact unsupported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence falls somewhere between a scintilla and a preponderance of evidence and would prompt a reasonable person to accept that the evidence adequately supports a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The substantial evidence standard embodies a "zone of choice" under which the Commissioner can act without the fear of court interference. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc). To decide whether or not substantial evidence supports a decision, we must examine the administrative record as a whole. *Kirk v. Sec'y of Health & Human Servs.*, 667 F. 2d 524, 536 (6th Cir. 1981). If supported by substantial evidence, we must affirm, even if we would have decided the case differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983) (per curiam), and even if substantial evidence also supports the opposite conclusion, *Mullen*, 800 F.2d at 545.

III.

The Social Security Act ("SSA") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To ascertain whether a claimant is disabled within the meaning of the Act, the ALJ must adhere to the five-step sequential analysis set forth in 20 C.F.R. § 404.1520. Pursuant to the five-step inquiry:

> (1) A claimant who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.
>
> (2) A claimant who does not have a severe impairment will not be found to be disabled.
>
> (3) A finding of disability will be made without consideration of vocational factors, if a claimant is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the Regulations. Claimants with lesser impairments proceed to step four.
>
> (4) A claimant who can perform work that he has done in the past will not be found to be disabled.
>
> (5) If a claimant cannot perform his past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

*Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007). The claimant bears the burden of proof at steps one through four. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). The burden then shifts to the Commissioner at step five "to identify a significant number of jobs in

the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

Coldiron challenges the ALJ's decision to assign him a sedentary work RFC, advancing both procedural and substantive arguments. He asserts that the ALJ: (A) impermissibly acted as a medical expert by rendering a sedentary work RFC despite the opinions of his treating and examining physicians, who all concluded that Coldiron could not perform sedentary work; (B) violated the treating physician rule by failing to comply with the good reason requirement and by failing to accord the opinions of his treating and examining physicians controlling weight; and (C) failed to take into account the effect that obesity had on Coldiron's ability to perform sedentary work, as required by Social Security Ruling ("SSR") 02-1p, 2000 WL 628049 (S.S.A. Sept. 12, 2002).

**A. The ALJ did not "overstep" by rendering a sedentary work RFC**

Coldiron first argues that, because each of his treating and examining physicians concluded that he could not perform sedentary work during the challenged period, the ALJ impermissibly acted as a medical expert by rendering a sedentary work RFC unsupported by substantial evidence. We disagree.

The Social Security Act instructs that the ALJ—not a physician—ultimately determines a claimant's RFC. 42 U.S.C. § 423(d)(5)(B); *see also Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574,

578 (6th Cir. 2009) ("Although physicians opine on a claimant's residual functional capacity to work, ultimate responsibility for capacity-to-work determinations belongs to the Commissioner."); 20 C.F.R. § 404.1546(c) ("[T]he administrative law judge . . . is responsible for assessing your residual functional capacity."). This court has recognized that, under those regulations, "the ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an assessment of [the claimant's] residual functional capacity." *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) (citation omitted). An ALJ does not improperly assume the role of a medical expert by weighing the medical and non-medical evidence before rendering an RFC finding. *See Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009); *cf. Dixon v. Massanari*, 270 F.3d 1171, 1177–78 (7th Cir. 2001) (noting cases in which the court reversed because the ALJ impermissibly "played doctor" by failing to address relevant medical evidence).

Coldiron's argument that the ALJ "played doctor" depends upon the other errors he alleges. First, he faults the ALJ's decision to give limited weight to the opinions of his treating and examining physicians—Drs. Evans, Bailey, and Murtagh—as procedural error and lacking substantial evidentiary support. Second, he faults the ALJ's sedentary work RFC determination for failing to take his obesity into account. As we explain below, both arguments lack merit.

**B. The ALJ met procedural and substantial evidence requirements when he accorded the opinions of Drs. Evans, Bailey, and Murtaugh reduced weight**

*1. Good Reason Requirement*

The ALJ must give "good reasons" for not according controlling weight to a treating physician's opinion. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). "An ALJ must give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in [the] case record.'" *Id.* (quoting 20 C.F.R. § 404.1527(d)(2)). Evidence in the record must support the relative weight that the adjudicator accords to the treating source's medical opinion and the reasons for that weight "must be sufficiently specific." SSR 96-2p, 1996 WL 374188, at *5 (S.S.A. July 2, 1996).

Dr. Murtaugh, a cardiologist, treated Coldiron several times over the course of a year and ultimately diagnosed him with right heart failure and sleep apnea. In the RFC he submitted to the ALJ, Dr. Murtaugh described Coldiron's ability to sit as limited, found him capable of standing and walking ten minutes without interruption for a total of only twenty minutes in an entire eight-hour workday, and precluded him from lifting, carrying, climbing, balancing, stooping, crouching, kneeling, and crawling. Dr. Murtaugh clarified that Coldiron's obesity—and no other medical impairment—accounted for these limitations.

Although Coldiron persuasively argues that some of the ALJ's proffered reasons for not according Dr. Murtuagh's opinion controlling weight do not comply with the good reason requirement, the ALJ appropriately labeled Dr. Murtaugh's RFC "too inconsistent and unclear to be helpful." Specifically, he noted two of Dr. Murtaugh's conclusions—that Coldiron could stand

and walk ten minutes without interruption and that he could walk for a total of only twenty minutes in an entire eight-hour day—lacked internal consistency. The ALJ further explained that no time limitations accompanied Dr. Murtaugh's restriction on Coldiron's ability to sit. *See Gaskin v. Comm'r of Soc. Sec.*, 280 F. App'x 472, 476 (6th Cir. 2008) (finding that an ALJ properly rebuffed the portion of an opinion that he characterized as vague). Thus, the ALJ's proffered reasons for not crediting Dr. Murtaugh's opinion satisfy the good reason requirement.

Moreover, even if the ALJ's asserted reasons for rejecting Dr. Murtaugh's RFC failed to adequately comply with the good reason requirement, we find such error harmless. In *Wilson,* we acknowledged the good reason requirement does not require conformity at all times. 378 F.3d at 547. Violation of the rule constitutes harmless error if the ALJ has met the goals of the procedural requirement—to ensure adequacy of review and to permit the claimant to understand the disposition of his case—even though he failed to comply with the regulation's terms. *Id.* An ALJ may accomplish the goals of this procedural requirement by *indirectly* attacking the supportability of the treating physician's opinion or its consistency with other evidence in the record. *See Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470–72 (6th Cir. 2006); *Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 464–65 (6th Cir. 2005). Notably, courts look to the ALJ's decision itself, and not other evidence in the record, for this support.

We find that the ALJ's evaluation of the other physicians' opinions of record and Coldiron's credibility undermined both the supportability and the consistency of Dr. Murtaugh's opinion. The

ALJ stated that, although Dr. Murtaugh—a cardiologist—treated Coldiron for heart failure, the limitations in his RFC opinion "appear to be based primarily on obesity," not his heart condition, and that "overall, the limitations that Dr. Murtaugh gives are too . . . unclear to be helpful." By making this statement, the ALJ attacked the supportability of Dr. Murtaugh's findings. Indeed, medical signs and laboratory findings do not substantiate Dr. Murtaugh's conclusory opinions. *See* 20 C.F.R. § 404.1527(d)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion."). A review of his medical records confirms that Dr. Murtaugh never tested the limitations his report attributed to Coldiron's obesity; rather, objective medical evidence supports only Dr. Murtaugh's findings related to Coldiron's heart condition. *See Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) ("[T]he ALJ is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." (internal quotation marks and citation omitted)).

The ALJ also indirectly attacked the consistency of Dr. Muraugh's opinion with other record evidence. Dr. Murtaugh suggested that Coldiron could not lift or carry any weight at all; the ALJ, however, explained that both state agency physicians found that Coldiron lacked a "diminished capacity for lifting/carrying." Although Dr. Murtaugh believed that Coldiron could stand and walk for only twenty minutes in an eight-hour workday, both state agency physicians reported that Coldiron could stand for six hours out of eight. Further, while Dr. Murtaugh found Coldiron's ability to sit limited, both state agency physicians opined that Coldiron could sit for six hours of eight

hours, and Dr. Evans opined that Coldiron could sit continuously for one hour at a time. Finally, while Dr. Murtaugh foreclosed climbing, balancing, stooping, crouching, kneeling, and crawling, the ALJ noted that Coldiron participated in physical therapy on a regular basis and that Coldiron reported that "the exercises helped and he had more mobility." The ALJ also noted that Coldiron "had an outline for a home exercise program and planned to continue with the pool and treadmill at the YMCA."

The ALJ's discussion of other record evidence shows that Dr. Murtaugh's opinion lacks the support and consistency required to compel controlling weight. We thus conclude that the ALJ "met the goal of § 1527(d)(2)—the provision of the procedural safeguard of reasons" even if he did not "compl[y] with the terms of the regulation." *Wilson*, 378 F.3d at 547.

*2. Substantial Evidence Supports the ALJ's Controlling Weight Decisions*

Coldiron also contends that, because each of his treating and examining physicians rendered RFCs that found him incapable of performing sedentary work, substantial evidence does not support the ALJ's failure to accord those opinions controlling weight, as required by the treating physician rule. Coldiron's argument misconstrues the rule.

The treating physician rule states that, although "the opinions of treating physicians are given substantial, if not controlling, deference," those opinions do not bind an ALJ. *Warner*, 375 F.3d at 390. Rather, an ALJ must give a treating physician's opinion controlling weight only if the opinion

relies on objective medical findings, *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985), and

substantial evidence does not contradict it, *Hardaway v. Sec'y of Health and Human Servs.*, 823 F.2d

922, 927 (6th Cir. 1987). If the ALJ finds the treating physician's opinion fails to meet these two

conditions, he may discredit that opinion, so long as he communicates a reasoned basis for doing so.

*Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987).

Coldiron's argument misinterprets the treating physician rule in two ways. First, the rule

does not instruct an ALJ to compare the consistency of treating and examining physicians' opinions

to each other. Instead, the rule instructs an ALJ to compare the consistency of a physician's opinion

to the *record as a whole*. 20 C.F.R. §§ 404.1527(d)(2); *see also Hephner v. Matthews*, 574 F.2d 359,

362 (6th Cir. 1978) (disability determination must be made on the basis of the record as a whole).

When deciding if a physician's opinion is consistent with the record, the ALJ may consider evidence

such as the claimant's credibility, whether or not the findings are supported by objective medical

evidence, as well as the opinions of every other physician of record. *See* SSR 96-5p, 1996 WL

374183, at *3 (S.S.A. July 2, 1996); SSR 96-8p, 1996 WL 374184, at *5 (S.S.A. July 2, 1996);

*Hickey-Haynes v. Barnhart*, 116 F. App'x 718, 726 (6th Cir. 2004) (An ALJ may "consider all of

the medical and nonmedical evidence." (quotation marks and citation omitted)). Coldiron asks us

to focus entirely on the opinions of these physicians while ignoring the remainder of the record.

Regulations and our precedent direct otherwise.

Second, Coldiron's argument that we give the shared opinions of Drs. Evans, Bailey, and Murtaugh controlling weight extends the treating physician rule to examining physicians as well. Generally, a treating physician's opinion deserves controlling weight because "a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). Dr. Evans, a specialist in occupational health, and Dr. Bailey, a consultative examiner for the Social Security Administration, each examined Coldiron only once. As the district court properly held, Drs. Evans and Bailey do not, for purposes of the regulation, constitute treating physicians. *See* 20 C.F.R. § 404.1502 (defining a treating source as a physician or other medical source who has had an ongoing relationship with the claimant); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529–30 (6th Cir. 1997) (stating that "the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once"). Thus, the treating physician rule did not oblige the ALJ to grant the opinions of Dr. Evans and Dr. Bailey controlling weight. *Atterberry v. Sec'y of Health & Human Servs.*, 871 F.2d 567, 572 (6th Cir. 1989).

As for treating physician Murtaugh's opinion, internal inconsistencies, conflicts with other record evidence, and lack of objective medical data provide substantial evidentiary support for the ALJ's decision not to accord it controlling weight.

## C. The ALJ's ultimate RFC determination took obesity into account and finds substantial evidentiary support

*1. Obesity*

Coldiron attacks the ALJ's ultimate RFC determination, alleging that the ALJ did not comply with the procedure outlined in SSR 02-1p for discussing how obesity affects a claimant's ability to work. We find this claim meritless.

Social Security Ruling 02-1p explains the Administration's policy on the evaluation of obesity. Although the Administration no longer qualifies obesity as a "listed impairment," the ruling "remind[s] adjudicators to consider its effects when evaluating disability." SSR 02-1p, 2000 WL 628049, at *1 (S.S.A.). SSR 02-1p states:

> An assessment should also be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment. Individuals with obesity may have problems with the ability to sustain a function over time . . . [O]ur RFC assessments must consider an individuals' maximum remaining ability to do sustained work activities in an ordinary work setting ona [sic] regular and continuing basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule.

*Id.* at *6.

Contrary to Coldiron's argument, the Sixth Circuit declared it "a mischaracterization to suggest that Social Security Ruling 02-1p offers any particular procedural mode of analysis for obese

-14-

disability claimants." *Bledsoe v. Barnhart*, 165 F. App'x 408, 412 (6th Cir. 2006). Instead, SSR 02-1p provides that "obesity, in combination with other impairments, 'may' increase the severity of the other limitations." *Id.* at 412.

The record here shows that the ALJ sufficiently accounted for the effect that obesity has on Coldiron's ability to do sedentary work. The ALJ discussed obesity multiple times throughout his findings of fact, determining that Coldiron "appeared to be limited primarily by obesity and deconditioning," and finding that, at 5'11" and 403 pounds, Coldiron qualified as morbidly obese. He also concluded that Coldiron's obesity constituted a "severe impairment" and acknowledged that obesity contributed to Coldiron's other medical conditions. He noted, for instance, that Coldiron's weight exacerbated his mild restrictive lung defect, dyspnea, obstructive sleep apnea, and the musculoskeletal symptoms related to Coldiron's knees and back.

Further, when assigning Coldiron an RFC, the ALJ considered RFCs from physicians who explicitly accounted for Coldiron's obesity. State agency physician Dr. Klyop noted Coldiron's "extreme range of obesity" in opining that he could perform light work. State agency physician Dr. Norris noted that Coldiron's morbid obesity exacerbated his other conditions. Dr. Bailey discussed Coldiron's morbid obesity throughout her findings and Dr. Evans recorded Coldiron's weight at 335 pounds. Dr. Zancan, who performed Coldiron's shoulder surgery, also noted Coldiron's obesity. Every medical opinion that the ALJ evaluated acknowledged Coldiron's obesity. Thus, by utilizing the opinions of these physicians in fashioning Coldiron's RFC, the ALJ incorporated the effect that

obesity has on the claimant's ability to work into the RFC he constructed. *See Bledsoe*, 165 F. App'x at 412 (noting that an ALJ does not need to make specific mention of obesity if he credits an expert's report that considers obesity); *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004) (stating "although the ALJ did not explicitly consider [claimant's] obesity, it was factored indirectly into the ALJ's decision as part of the doctors' opinions.").

Given the ALJ's discussion of Coldiron's obesity throughout his findings of fact and the ALJ's use of RFCs from physicians who explicitly considered Coldiron's obesity, we find that the ALJ adequately accounted for the effect that obesity has on Coldiron's ability to perform sedentary work.

*2. Substantial Evidence*

In addition to finding Coldiron's argument unpersuasive, upon review of the record, we find substantial evidentiary support for the ALJ's sedentary work RFC. An ALJ considers numerous factors in constructing a claimant's RFC, including the medical evidence, non-medical evidence, and the claimant's credibility. *See* SSR 96-5p, 1996 WL 374183, at *3; SSR 96-8p, 1996 WL 374184, at *5; *Hickey-Haynes,* 116 F. App'x at 726–27. Dr. Klyop and Dr. Norris gave Coldiron less restrictive RFCs than the ALJ did, both opining that he could perform light work. Dr. Norris also opined that Coldiron's subjective complaints were disproportionate to the objective medical evidence. Coldiron's limited credibility further supports the ALJ's decision to discount Coldiron's own assessment of his conditions when assigning Coldiron's sedentary work RFC. Evidence also revealed that Coldiron had normal motor strength in his lower extremities, walked with a normal

gait, participated in physical therapy on a regular basis, and exercised using the pool and treadmill at the YMCA. As the ALJ properly found, this evidence "does not suggest [that Coldiron] lacks either the exertional capacity or stamina to perform sedentary work." We find, therefore, that substantial evidence supports the ALJ's sedentary work RFC.

IV.

We affirm the judgment of the district court.